



IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | **FILED UNDER SEAL** |
| v. | Criminal No. 3:11CR **017** |
| JUSTIN GLYNN FRENCH, | 18 U.S.C. § 1343 (Wire Fraud) (Count 1) |
| Defendant. | Forfeiture Allegation |
| | 18 U.S.C. § 1957(a) (Engaging in Unlawful Monetary Transaction) (Count 2) |

## CRIMINAL INFORMATION

THE UNITED STATES ATTORNEY CHARGES THAT:

### INTRODUCTION

1. At all times material to the charge in the Information, defendant JUSTIN GLYNN FRENCH was the owner/operator of French Consulting Company, a real estate development company located at 1314 East Cary Street, Richmond, Virginia 23219, which specialized in urban renewal projects and the rehabilitation of historic buildings. Through French Consulting Company, the defendant created numerous business entities for individual rehabilitation projects. Usually, the business entities would be named after the rehabilitation property address, such as 1509 Belleville Street, LLC, to serve as the defendant's business name for a rehabilitation project at 1509 Belleville Street, Richmond, Virginia 23230.

2. In connection with rehabilitating a number of historic properties, FRENCH actively sought state and federal historic tax credits. The state and federal tax credit programs were:

a. On the state level, the Virginia Department of Historic Resources (VDHR) administered the Virginia Historic Rehabilitation Tax Credit (VHRTC) program. That program allowed the property owner to receive a state income tax credit equal to 25% of the amount spent on eligible rehabilitation expenses. The VHRTC program was available for owner-occupied, as well as income-producing buildings. The property owner could often claim both the federal and state tax credits for qualified rehabilitation expenses.

b. On the federal level, the U.S. Department of Interior National Park Service (DOI-NPS) administered the Federal Historic Preservation Tax Incentives program (FHPTI). This program encouraged private sector rehabilitation of historic buildings through tax credit equal to 20% of the amount spent on eligible rehabilitation expenses. The FHPTI was available for income-producing properties. The DOI-NPS administered the FHPTI program in partnership with the IRS and corresponding state agencies.

3. In Virginia, both the federal and state historic tax credit programs were administered through the VDHR. The application processes for both the state and federal historic tax credit programs were divided into three parts, a summary of which is as follows:

a. **Part 1: Historic Preservation Certification Application – Evaluation of Significance.** Both the state and federal historic rehabilitation tax credit programs utilized the DOI-NPS Part 1 form (Part 1), which upon completion is submitted to the VDHR for review and processing. The Part 1 form, which required the signature of the property owner, was generally aimed at determining whether a particular building qualifies as a "historic structure" for the tax credit programs. Upon approval of the Part 1 by both the VDHR and the DOI-NPS, the property owner was eligible to move forward in the application process. It was not uncommon for the Part 1 and Part 2 applications to be submitted simultaneously by the property owner.

b. **Part 2: Historic Preservation Certification Application – Description of Rehabilitation.** Both the state and federal historic rehabilitation tax credit programs utilized the DOI-NPS Part 2 form (Part 2), which upon completion were both submitted to the VDHR for review and processing. Part 2 must be completed by all owners of certified historic structures seeking to have rehabilitations certified by the Secretary of the Interior as being consistent with the historic character of the structure and, where applicable, the district in which the structure is located, thus qualifying as a "certified rehabilitation." Part 2 was used to describe proposed, ongoing, or completed rehabilitation work. Proposed work that does not appear to be consistent with the Standards would be identified, and advice would be given to assist property owners, architects, or builders in bringing the project into conformance with the Standards. Regarding the evaluation of Part 2, all projects were reviewed and evaluated in accordance with the Secretary of the Interior's Standards for Rehabilitation. These ten (10) Standards were broadly worded to guide the rehabilitation of all historic structures, such as industrial complexes, warehouses, schools, commercial structures, and residences.

c. **Part 3: Historic Preservation Certification Application – Request for Certification of Completed Work.** The state and federal historic rehabilitation tax credit programs each utilized separate Part 3 forms; however, both the Virginia and DOI-NPS forms were submitted by the applicant to the VDHR for review and processing. A project did not become a "certified rehabilitation" eligible for state and/or federal tax incentives until it was completed and so designated by the VDHR for state tax credits and the NPS for federal tax credits. Part 3 required the applicant include photographs of completed work (both exterior and interior, preferably showing the same views as shown in "before" photographs required during the Part 2 process). When rehabilitation

expenses exceed $100,000, certification by a certified public accountant or equivalent of the actual costs attributed to the rehabilitation of the historic structure was required by the VDHR.

4. The owner would have to hold the building for five (5) full years after completing the rehabilitation, or pay back the federal tax credits. If the owner disposed of the building within a year after it is placed in service, 100% of the federal credit was recaptured. For properties held between one (1) and five (5) years, the federal tax credit recapture amount was reduced by 20% per year.

5. Since 2005, FRENCH had participated in the state and federal historic rehabilitation tax credit programs through the rehabilitation of qualified properties. FRENCH initiated the historic rehabilitation tax credit application process on at least 35 properties in Richmond, Virginia, of which approximately 19 were completed. As of August 2010, the defendant had an additional 16 projects in the early stages of the tax credit approval process, which were aimed at producing additional requests for federal and state tax credits.

## COUNT ONE
## (Wire Fraud)

1. The United States Attorney realleges and incorporates by reference the Introduction section contained above, as if fully set forth herein.

2. In or about April 2009, in the Eastern District of Virginia, defendant JUSTIN GLYNN FRENCH did devise, and intended to devise, a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, which scheme and artifice, and the execution and attempted execution thereof, operated in substance as follows:

### Scheme to Defraud

3. On or about March 7, 2008, FRENCH caused the purchase of 1509 Belleville Street by and through 1509 Belleville Street LLC, an entity created by the defendant for this property. On behalf of 1509 Belleville Street LLC, FRENCH, a member of French Holdings Management LLC, obtained First Market Bank commercial loan ******0942 in the amount of $1,062,500 for the acquisition and renovation of 1509 Belleville Street. According to the personal financial statement dated August 20, 2009, that FRENCH provided to First Market Bank, the defendant's liability for 1509 Belleville Street LLC was $1,060,000.

4. At various times in 2008, FRENCH represented to individuals associated with First Market Bank that the rehabilitation costs for this property would be approximately $200,000 - $275,000.

5. On or about November 7, 2008, FRENCH caused the submission of the Part 1 and Part 2 Historic Preservation Certification Applications for 1509 Belleville Street to the VDHR. The applications, each bearing the defendant's signature, were submitted on behalf of French Consulting Company. The applications identify the property owner as Justin French, 1509 Belleville Street LLC, 1314 East Cary Street. The Part 2 application provided specific information on the work for which approval was being sought and estimated the cost of

rehabilitation for this project at $1,323,310. Approvals of the Part 1 and Part 2 applications were granted by both the VDHR and the DOI-NPS.

6. On or about March 20, 2009, FRENCH caused the submission of the federal and state Part 3 Historic Preservation Certification Applications for 1509 Belleville Street to the VDHR. The applications, each bearing the signature of the defendant, identified the property owner as Justin G. French, 1509 Belleville Street LLC, 1314 East Cary Street. The Part 3 applications reported the costs attributed solely to the rehabilitation of the historic structure as $1,571,503, and the rehabilitation project started on March 7, 2008 and concluded on December 19, 2008.

7. As a result of the above submissions, on or about March 26, 2009, the VDHR approved French's state Part 3 application and awarded him $392,875.75 in state tax credits. On or about April 17, 2009, the DOI-NPS approved French's federal Part 3 application authorizing him $314,300.60 in federal tax credits for this project.

8. In truth and in fact, FRENCH grossly inflated the requested tax credits for the 1509 Belleville Street, LLC project. The renovation costs claimed by French on the state and federal Part 3 applications were significantly higher than the costs documented in the First Market Bank loan file for 1509 Belleville Street. Specifically, the costs for the rehabilitation of this property French claimed on the Part 3 applications was $1,571,503, significantly more than the $1,062,500 loan obtained from First Market Bank, of which only $280,000 was spent on the renovation of the property.

9. In truth and in fact, the actual authorized expenses for the purpose of obtaining state and federal historic rehabilitation tax credits should have been approximately $336,000 (including the 20% developer fee), as opposed to the $1,571,503 represented to state and federal authorities. If the actual amounts consistent with the bank loan file had been submitted to the state and federal authorities, French would have received approximately $84,000 (including the allowable 20% developer fee) in Virginia tax credits (as opposed to $392,875.75 in Virginia tax

credits) and $67,200 (including the allowable 20% developer fee) in federal tax credits (as opposed to $314,300.60 in federal tax credits). The combined total of federal and state tax credits French illegally obtained by inflating the rehabilitation expenses for 1509 Belleville Street was approximately $555,976.35.

10. After fraudulently obtaining the historic tax credits through the wire fraud scheme described above, FRENCH sold the state and federal tax credits for 1509 Belleville Street to various investors, including:

    a. On or about February 17, 2009, various individual investors paid the defendant approximately $228,800 in exchange for the purchase of state tax credits related to 1509 Belleville Street. These funds were deposited into the 1509 Belleville Street Holdings, LLC business checking account (ending in 4612) at First Market Bank (now known as Union First Market Bank). As part of the investment process and separate and apart from the wire fraud scheme charged in Count One, FRENCH caused the mailing via United States mail of subscription agreements to the individual investors. Those investors, in turn, executed the subscription agreements and returned those documents along with their investment funds to the defendant. On or about April 3, 2009, the defendant transferred approximately $218,000 of these funds to his personal money market savings account (ending in 9361) at First Market Bank.

### Wire Fraud in Connection With the Scheme

11. On or about April 23, 2009, in the Eastern District of Virginia, defendant, JUSTIN GLYNN FRENCH, with the intent to defraud and for the purpose of executing a scheme and artifice to defraud and to obtain money and property from the DOI-NPS through materially false representations in connection with the scheme set forth above, did knowingly cause to be transmitted, in interstate commerce, by means of wire communications, certain writings, signs, signals and sounds, to wit: on or about April 3, 2009, the defendant authorized the payment of the $2,250 application fee for the 1509 Belleville Street Part 3 Historic Preservation Certification Applications by using American Express Company account number \*\*\*\*\*\*\*\*\*\*\*1015. As part

of that transaction on or about April 22, 2009, the defendant's payment was processed by and through the American Express Company in Phoenix, Arizona and the Fifth Third Bank (the credit card processor for the United States Treasury Department) located in Cincinnati, Ohio. As a result, the defendant's $2,250 payment was processed across state lines ultimately deposited with the United States Treasury Department account associated with DOI-NPS for payment in connection with the application process. As a result of the false application submissions, the defendant received approximately $314,300.60 in federal tax credits for 1509 Belleville Street. (In violation of Title 18, United States Code, Section 1343).

## FORFEITURE ALLEGATION

Pursuant to Rule 32.2(a) FED. R. CRIM. P., the defendant is hereby notified that, upon conviction of the offense outlined in Count One of the Criminal Information, he shall forfeit to the United States his interest in any property, real or personal, that constitutes or is derived, directly or indirectly, from proceeds traceable to the commission of said violation. If property subject to forfeiture cannot be located, the United States will seek an order forfeiting substitute assets.

Property subject to forfeiture includes, but is not limited to, the following:

the sum of at least $7,000,000.00 representing the proceeds of the offense outlined in Count One of this Criminal Information;

the sum of $25,000.00 as evidenced by check number 22333 payable to "Justin French" issued by Seminole Hardrock Hotel & Casino Hollywood;

72.7417 shares of stock in Synergy Systems, Inc., as evidenced by a stock certificate in the name of "Justin G. French;"

500 shares of Hampton Roads Bankshares, Inc., as evidenced by a stock certificate in the name of "Justin G. French;"

Personal property of French Consulting and/or Justin French previously located at 1312 and 1314 East Cary Street, Richmond, Virginia, more particularly described in Attachment C;

Real property and improvements, known as 330 Oak Lane, Richmond, Virginia 23226;

Defendant's interest in various corporate entities, partnerships and Limited Liability Corporations;

Assorted artwork more particularly described in Attachment A; and

Assorted furniture more particularly described in Attachment B.

(In accordance with Title 18, United States Code, Sections 981(a)(1)(C), as incorporated by 28 U.S.C. § 2461(c) and Title 21, United States Code, Section 853.)

## COUNT TWO
### (Engaging in Unlawful Monetary Transactions)

1. The United States Attorney hereby incorporates the allegations contained in the Introduction Section and Count One of this Information as if fully set forth herein.

2. On or about April 3, 2009, in the Eastern District of Virginia, defendant JUSTIN GLYNN FRENCH did knowingly engage in a monetary transaction by, through, and to a financial institution, affecting interstate commerce, involving criminally derived property of a value greater than $10,000, derived from specified unlawful activities, namely: Mail Fraud, in violation of 18 U.S.C. § 1341, to wit:

   a. On or about February 17, 2009, various individual investors paid the defendant approximately $228,800 in exchange for the purchase of state tax credits related to 1509 Belleville Street. These funds were deposited into the 1509 Belleville Street Holdings, LLC business checking account (ending in 4612) at First Market Bank (now known as Union First Market Bank).

   b. On or about April 3, 2009, the defendant caused the transfer of approximately $218,000 from the 1509 Belleville Street Holdings, LLC business check account at First Market Bank (ending in 4612) to his personal money market savings account at First Market Bank (ending in 9361).

(In violation of Title 18, United States Code, Sections 1957(a))

Respectfully Submitted,

NEIL H. MACBRIDE
UNITED STATES ATTORNEY

By: _____/s/ Michael Gill_____
Michael R. Gill
Laura Marshall
Assistant United States Attorneys
Main Street Centre
600 E. Main Street, Suite 1800
Richmond, Virginia 23219-2447
(804) 819-5400

## Attachment A
## (Artwork)

| Artist | Description |
|---|---|
| Kiara Pelissier | Commissioned piece - recycled glass sculpture approx 18 inches in diameter |
| Nell Blaine | Drying Flowers I, 1989 - india ink and graphite, 14 x 11", signed |
| Robert De Niro Sr. | Figure Holding Head, 1979 - charcoal on paper, 25 3/4 x 19 3/4", signed |
| Robert De Niro Sr. | Two Seated Women, n.d. - charcoal on paper, 25 1/2 x 19 5/8", signed |
| Wolf Kahn | Dormer Window, 1972 - oil on canvas, 40 x 50", signed |
| Fred Crist | Pillars of Jazz, 2004 - forged steele, 26 x 12 x 6", signed |
| Fred Crist | Stacked Pillar #16 (green), 2004 - cast bronze, 18 x 16 x 12", signed |
| David Freed | River Fragment, Deep Cold, 2004 - mixed media, 50 x 12", signed |
| David Freed | River Fragment, Ice and Snow, 2004 - mixed media, 50 x 12", signed |
| Robert Stuart | Golden Gates, 2003 - oil, wax medium on canvas, 60 x 48", signed |
| Steve Bickley | Rosedale, 2002 - steel, 8.1 x 8w x 16" h |
| Philip Geiger | July 9 am, 2004 - oil on panel, 24 x 28", signed |
| Laura Letinsky | Untitled #51 (from the I Did Not Remember I Had Forgotten Series), 2002 - chromogenic print, 23 3/4 x 29", edition 1 of 5, signed |
| Laura Letinsky | Untitled #59 (from the I Did Not Remember I Had Forgotten Series), 2002 - chromogenic print, 23 3/4 x 29", edition 1 of 5, signed |

| **ARTIST** | **DESCRIPTION** |
|---|---|
| Carlton Newton | Untitled, 1999 - industrial gypsum cement, fiberglass, galvanized steel wire, dimensions variable |
| Roxy Paine | Scumak (white), 2002 - linear low-density polyethylene, dimensions variable |
| Heide Trepanier | Tempest, 2004 - enamel and canvas on board, 60 x 60", signed |
| Ron Johnson | Casual Affair, 2005 - mylar, graphite, acrylic, 240 x 42" |
| Nathan Oliveira | Angel Rocker, 2005 - color sugar lift aquatint with drypoint, 52 x 41:, edition 15/40, signed |
| Henri Matisse | Danseuse (Dix Danseuses), 1926 - lithograph, 24 x 32", edition of 130, signed and numbered |
| Kiara Pelissier | Untitled, 2006 - blown glass, dimensions variable |
| Manuel Neri | San Felipe Figure Study No. 2, 2002 - waterbased pigments, charcoal on paper, 23 1/2 x 18", signed |
| Lois Dodd | Another Pond Shape, 2005 - oil on masonite, 18 x 16", signed |
| Cy Twombly | Natural History, Part I Mushrooms, No. II, 1974, mixed media, 30 x 22", edition 94/98, signed |
| Carroll Dunham | Untitled (Sept 14, 2006) (one), 2006 - monotype with hand additions in watercolor, 64 x 50", signed |
| Kiara Pelissier | Untitled, 2007 - glass, dimensions variable |
| Nell Blaine | Hudson, Riverside, 1962 - pastel and watercolor on paper, 14 x 20", signed |
| Alyson Shotz | 3 piece, Three Steps Closer Than Infinity, 2007 - lithograph on mirrorized mylar in custom made polished Plixiglas cases designed by the artist, 24 x 30 x 3", edition of 9 |
| John Baldessari | Person With Guitar (Pink), 2004 - 3-layer, 5-color screenprint construction, laminated to Sintra and hand-cut, 34 1/2 x 42 x 3", edition 21 of 45, signed |

| **ARTIST** | **DESCRIPTION** |
|---|---|
| Gerald Donato | Some Day My Prince Will Come, 1971 - photo lithograph, edition 14 of 18, 22.5 x 33.5", signed, titled, and numbered |
| Gerald Donato | Come on in, 1973 - photo lithograph, edition 35 of 40, 26.5 x 33.5", signed, titled, and numbered |
| Gerald Donato | Logans Port Indiana, 1972 - photo lithograph, edition 13 of 17, 23.5 x 32.5", signed, titled, and numbered |
| Ron Johnson | Pull The String, 2009 - acrylic on panel, 30 x 16", signed |
| Anthony Bronza | Bench, 2006 - American walnut, 17 x 40 x 17 1/2" |
| Ron Johnson | Elemental Return, 2004 - acrylic and silk, 26 x 26 1/2" |
| Stephen Fox | Untitled (Series of 3 Views of Downtown Richmond), 2004 - giclee print, 17 1/2 x 20" |
| Travis Fullerton | Gravelly Point, Arlington, Virginia, 2007 - from the Combined Alterations series, monotype, 20 3/4 x 86" |
| Travis Fullerton | Floodwall 1 - From the Sustain series, Slenium-toned silver print |
| Travis Fullerton | Floodwall 2 - From the Sustain series, Slenium-toned silver print |
| Ed Trask | Dairy |
| Ron Johnson | Yellow, 4 x 6 |

# ATTACHMENT B
## (FURNITURE)

| MAKER | DESCRIPTION |
|---|---|
| Fendi | Simplicio 3 white leather sofa |
| Fendi | (2) Black lacquered chairs with swarovski crystal knobs |
| Fendi | (2) White leather armchairs (Diva) |
| Fendi | Servus w/ Tray in black, chromed metal legs |
| Fendi | Black FF 78.7 x 188 New Zealand wood, hand tufted rug |