IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 3:11CR017 |
| | ) | |
| JUSTIN GLYNN FRENCH, | ) | |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF FACTS

The parties stipulate that the following facts are true and correct and that had the matter gone to trial the United States could have proven each of them beyond a reasonable doubt:

1.    At all times material to the charge in the Information, defendant JUSTIN GLYNN FRENCH was the owner/operator of French Consulting Company, a real estate development company located at 1314 East Cary Street, Richmond, Virginia 23219, which specialized in urban renewal projects and the rehabilitation of historic buildings.  Through French Consulting Company, the defendant created numerous business entities for individual rehabilitation projects. Usually, the business entities would be named after the rehabilitation property address, such as 1509 Belleville Street, LLC, to serve as the name of the defendant's business entity for a rehabilitation project at 1509 Belleville Street, Richmond, Virginia 23230.

2.    FRENCH also had ownership interests in other Richmond businesses, including CitySpace Solar LLC and Gammino Reality and Development, d/b/a City & Guilds ("City & Guilds").  CitySpace Solar was a renewable energy contracting company that installed

commercial and residential solar photovoltaic and solar thermal systems. City & Guilds was a general construction contracting company.

## Historic Tax Credit Program:

3.    In connection with rehabilitating a number of historic properties, FRENCH actively sought state and federal historic tax credits. The state and federal tax credit programs were:

a.    On the state level, the Virginia Department of Historic Resources (VDHR) administered the Virginia Historic Rehabilitation Tax Credit (VHRTC) program. That program allowed the property owner to receive a state income tax credit equal to 25% of the amount spent on eligible rehabilitation expenses. The VHRTC program was available for owner-occupied, as well as income-producing buildings. The property owner could often claim both the federal and state tax credits for qualified rehabilitation expenses.

b.    On the federal level, the U.S. Department of Interior National Park Service (DOI-NPS) administered the Federal Historic Preservation Tax Incentives program (FHPTI). This program encouraged private sector rehabilitation of historic buildings through tax credit equal to 20% of the amount spent on eligible rehabilitation expenses. The FHPTI was available for income-producing properties. The DOI-NPS administered the FHPTI program in partnership with the IRS and corresponding state agencies.

2

4.      In Virginia, both the federal and state historic tax credit programs were administered through the VDHR.   The application processes for both the state and federal historic tax credit programs were divided into three parts, a summary of which is as follows:

a.      **Part 1:  Historic Preservation Certification Application – Evaluation of Significance.**  Both the state and federal historic rehabilitation tax credit programs utilized the DOI-NPS Part 1 form (Part 1), which upon completion is submitted to the VDHR for review and processing.  The Part 1 form, which required the signature of the property owner, was generally aimed at determining whether a particular building qualifies as a "historic structure" for the tax credit programs. Upon approval of the Part 1 by both the VDHR and the DOI-NPS, the property owner was eligible to move forward in the application process.  It was not uncommon for the Part 1 and Part 2 applications to be submitted simultaneously by the property owner.

b.      **Part 2:  Historic Preservation Certification Application – Description of Rehabilitation.**  Both the state and federal historic rehabilitation tax credit programs utilized the DOI-NPS Part 2 form (Part 2), which upon completion were both submitted to the VDHR for review and processing.  Part 2 must be completed by all owners of certified historic structures seeking to have rehabilitations certified by the Secretary of the Interior as being consistent with the historic character of the structure and, where applicable, the district in which the structure is located, thus qualifying as a "certified rehabilitation."  Part 2 was used to describe proposed, ongoing, or completed rehabilitation work.  Proposed work that does not appear to be consistent with the Standards would be identified, and advice would be given to assist property owners,

3

architects, or builders in bringing the project into conformance with the Standards. Regarding the evaluation of Part 2, all projects were reviewed and evaluated in accordance with the Secretary of the Interior's Standards for Rehabilitation. These ten (10) Standards were broadly worded to guide the rehabilitation of all historic structures, such as industrial complexes, warehouses, schools, commercial structures, and residences.

c.      **Part 3: Historic Preservation Certification Application – Request for Certification of Completed Work.** The state and federal historic rehabilitation tax credit programs each utilized separate Part 3 forms; however, both the Virginia and DOI-NPS forms were submitted by the applicant to the VDHR for review and processing. A project did not become a "certified rehabilitation" eligible for state and/or federal tax incentives until it was completed and so designated by the VDHR for state tax credits and the NPS for federal tax credits.  Part 3 required the applicant include photographs of completed work (both exterior and interior, preferably showing the same views as shown in "before" photographs required during the Part 2 process).  When rehabilitation expenses exceed $100,000, certification by a certified public accountant or equivalent of the actual costs attributed to the rehabilitation of the historic structure was required by the VDHR.

5.      According to DOI-NPS, the owner would have to hold the building for five (5) full years after completing the rehabilitation, or pay back the federal tax credits.  If the owner disposed of the building within a year after it is placed in service, 100% of the federal credit was

recaptured. For properties held between one (1) and five (5) years, the federal tax credit recapture amount was reduced by 20% per year.

6.      Since 2005, FRENCH had participated in the state and federal historic rehabilitation tax credit programs through the rehabilitation of qualified properties. FRENCH initiated the historic rehabilitation tax credit application process on at least 35 properties in Richmond, Virginia, of which approximately 20 were completed. As of August 2010, FRENCH had an additional 16 projects in the early stages of the tax credit approval process, which were aimed at producing additional requests for federal and state tax credits.

**1509 Belleville Street, Richmond, Virginia 23230, owned by 1509 Belleville Street LLC, 1314 East Cary Street, Richmond, Virginia.**

7.      On March 7, 2008, 1509 Belleville Street was purchased by 1509 Belleville Street LLC, an entity created by FRENCH for this property. On behalf of 1509 Belleville Street LLC, Justin FRENCH, a member of FRENCH Holdings Management LLC, obtained First Market Bank commercial loan ******0942 in the amount of $1,062,500 for the acquisition and renovation of 1509 Belleville Street. The guarantor on this loan was Justin FRENCH. The address for both 1509 Belleville Street LLC and 1509 Belleville Street Holdings LLC was 1314 East Cary Street, the main office of FRENCH Consulting Company. According to the personal financial statement dated August 20, 2009, that FRENCH provided to First Market Bank, FRENCH's liability for 1509 Belleville Street LLC was $1,060,000.

8.      Supporting documentation in the First Market Bank loan file for 1509 Belleville Street included e-mail correspondence between FRENCH and representatives of First Market Bank. In an e-mail dated January 8, 2008, FRENCH initiated a discussion with a First Market

Bank representative regarding financing for the purchase and renovation of this property. FRENCH stated that the purchase price for 1509 Belleville Street was $700,000, and the property would require approximately $200,000 in renovations. In a separate e-mail to the same First Market representative dated March 7, 2008, FRENCH indicated 1509 Belleville Street would produce approximately $300,000 in state historic tax credits and $300,000 in federal historic tax credits, for which FRENCH would be compensated between $450,000 and $500,000 by his tax credit investors. FRENCH identified his tax credit investors as Markel Corporation and Foss Virginia 2007 Fund LP.

9.      Additional First Market Bank documentation dated February 5, 2008, reiterated that FRENCH would incur approximately $200,000 in renovation costs for 1509 Belleville Street. The renovations would include repairing the roof, repairing/repainting the building façade, new windows, new doors, reconfiguration of the ingress/egress and parking areas, painting the interior walls, updating the bathrooms, and upgrading the electrical service, HVAC, and lighting.

10.     The First Market Bank loan file included documentation in support of the various expenses associated with the renovation of 1509 Belleville Street, which is summarized as follows:

a.      **Construction Completion Agreement:** This agreement, dated June 19, 2008, was between City & Guilds and J. FRENCH, French Consulting, 1314 East Cary Street. The agreement detailed the contract between City & Guilds and 1509 Belleville Street LLC, in which City & Guilds agreed to complete the commercial turn-key project at 1509 Belleville Street for $275,000, which includes architectural and engineering

6

costs.   It should be noted that Justin FRENCH (as stated above in paragraph 2) had an ownership interest in City & Guilds at the time of these transactions.

      b.     **Proposal for Construction:** This proposal by City & Guilds, dated May 16, 2008, was for construction work at 1509 Belleville Street.  The proposal is for $275,000, to include exterior repairs (painting, ingress-garage doors, windows, doors, roof), interior repairs (painting, fixtures), flooring (clean up cement), trades (electrical upgrades, lighting upgrades, HVAC upgrades), bathrooms (updated figures, painting), and tenant lay out (according to plans).

      c.     **City & Guilds Invoices:** The loan file contained seven (7) City & Guilds invoices for work performed at 1509 Belleville Street.  A summary of these invoices are as follows:

- **Invoice 1407** dated May 11, 2008 for Bathroom (Fixtures 30% Complete - $4,964.33, Painting Interior 30% Complete - $4,379.18) and 18% Handling Fee ($1,681.83) for a total of $11,025.34;

- **Invoice 1409** dated May 14, 2009 for Roof (Roof Work 100% Complete - $3,751.64), Tenant Lay-Out (Lay-Out 25% Progress - $13,496.49), and 18% Handling Fee ($3,104.66) for a total of $20,352.79;

- **Invoice 1487** dated May 23, 2008 for Bathroom (Fixtures 100% Complete - $10,348.79), Tenant Lay-Out (Lay-Out 50% Progress - $12,948.55, People Doors Repaired $9,006.47), Ingress – Truck Entrances (Pour Gravel - $13,102.95), and 18% Handling Fee ($8,173.22) for a total of $53,579.98;

7

- **Invoice 1523** dated June 19, 2008 for Trades (Electrical 75% Progress - $4,673.11, HVAC Upgrades 50% Progress - $3,568.56), Tenant Lay-Out (Lay-Out 65% Progress - $13,105.79, Garage Doors Installed - $8,649.85), Painting (Interior Walls - $10,948.65), and 18% Handling Fee ($7,370.27) for a total of $48,316.23;

- **Invoice 1651** dated August 8, 2008 for Trades (HVAC Upgrades 60% Complete - $1,781.56), Tenant Lay-Out (Lay-Out 85% Progress - $9,008.64; Garage Doors Installed - $4,231.90), Painting (Interior Walls 100% Complete - $6,497.82), and 18% Handling Fee ($3,873.59) for a total of $25,393.51;

- **Invoice 1722** dated September 22, 2008 for Trades (Electrical 90% Progress - $2,542.37; HVAC Upgrades 90% Progress - $5,084.74), Tenant Lay-Out (Lay-Out 90% Progress - $4,237.22), and 18% Handling Fee ($2,135.58) for a total of $13,999.91; and

- **Invoice 2511** dated November 21, 2008 for Retainage in the amount of $20,000.

      d.      **Draw Budget:** The loan file contained budget information for each of the ten (10) draws taken on the loan for 1509 Belleville Street. For each draw there was a document titled 1509 Belleville Street Draw Budget, which provided information on the line items, the original budget for each line item, and the amount of funds associated with each draw. The Draw Budget for Draw 10, which was the final draw dated December 8, 2008, indicates the line items and their respective Original Budget amounts as follows:

| Line Item | Original Budget |
| --- | --- |
| Acquisition | $695,000 |
| Roof Repair | $30,000 |
| Exterior Repair/Paint | $25,000 |
| Windows/Doors | $25,000 |
| Ingress/Egress | $20,000 |
| Repaint Interior | $25,000 |
| Electrical | $20,000 |
| HVAC Upgrades | $20,000 |
| Bathrooms | $20,000 |
| Tenant Configuration | $65,000 |
| Retainage | $30,000 |
| Closing Costs | $25,000 |
| Interest Reserve | $62,500 |
| **TOTAL** | **$1,062,500** |

11.     On November 7, 2008, FRENCH caused the submission of the Part 1 and Part 2 Historic Preservation Certification Applications for 1509 Belleville Street to the VDHR. The applications, each bearing the defendant's signature, were submitted on behalf of FRENCH Consulting Company. The applications identify the property owner as Justin FRENCH, 1509 Belleville Street LLC, 1314 East Cary Street.

12.     The Part 2 application provided specific information on the work for which approval was being sought. In summary, the requested work included the retention, repair, and/or refinishing of the exterior walls, some flooring; and the replacement of the roof, exterior doors, windows, some flooring, electrical system, HVAC system, electrical wiring, and HVAC system; upgrading the bathroom fixtures and plumbing; and the conversion of the loading dock area into a parking lot. The cost of rehabilitation for this project was estimated at $1,323,310, and the work was anticipated to occur between March 7, 2008 and December 2008. Approvals of the Part 1 and Part 2 applications were granted by both the VDHR and the DOI-NPS.

13.     On March 20, 2009, FRENCH caused the submission of the federal and state Part 3 Historic Preservation Certification Applications for 1509 Belleville Street to the VDHR. The applications, each bearing the signature of Justin FRENCH, identified the property owner as Justin G. FRENCH, 1509 Belleville Street LLC, 1314 East Cary Street. The Part 3 applications reported the costs attributed solely to the rehabilitation of the historic structure as $1,571,503, and the rehabilitation project started on March 7, 2008 and concluded on December 19, 2008. As required for projects with costs in excess of $100,000, on behalf of FRENCH's applications the VDHR also received a letter dated February 25, 2009 and Schedule of Qualified Rehabilitation Expenditures from C.M., CPA. C.M.'s letter stated he reviewed the expenditures for the rehabilitation of 1509 Belleville Street, discussed the project with the developers and their contractor, and that expenses in the amount of $1,571,503 all appeared to be valid costs in accordance with all state and federal regulations.

14.     On March 26, 2009, the VDHR approved FRENCH's state Part 3 application and awarded him $392,875.75 in state tax credits. On April 17, 2009, the DOI-NPS approved FRENCH's federal Part 3 application authorizing him $314,300.60 in federal tax credits for this project.

15.     FRENCH agrees that in truth and in fact, the requested tax credits for the 1509 Belleville Street, LLC project were grossly inflated. The renovation costs claimed by FRENCH on the state and federal Part 3 applications were significantly higher than the costs documented in the First Market Bank loan file for 1509 Belleville Street (described above in paragraphs 8-10). Specifically, the costs for the rehabilitation of this property FRENCH claimed on the Part 3

10

applications was $1,571,503, which is significantly more than the $1,062,500 loan obtained from First Market Bank, of which only $280,000 was spent on the renovation of the property.

16.     FRENCH agrees and stipulates that the actual authorized expenses for the purpose of obtaining state and federal historic rehabilitation tax credits should have been approximately $336,000 (including the 20% developer fee), as opposed to the $1,571,503 represented to state and federal authorities.  If the actual amounts consistent with the bank loan file had been submitted to the state and federal authorities, FRENCH would have received approximately $84,000 (including the allowable 20% developer fee) in Virginia tax credits (as opposed to $392,875.75 in Virginia tax credits) and $67,200 (including the allowable 20% developer fee) in federal tax credits (as opposed to $314,300.60 in federal tax credits).  The combined total of federal and state tax credits FRENCH illegally obtained by inflating the rehabilitation expenses for 1509 Belleville Street was approximately $555,976.35.

**Wire Fraud in Connection with 1509 Belleville Street Rehabilitation Project (Count 1)**

17.     In or about April 2009, in the Eastern District of Virginia and elsewhere, defendant JUSTIN GLYNN FRENCH, with the intent to defraud and for the purpose of executing a scheme and artifice to defraud and to obtain money and property from the Virginia Department of Historic Resources (VDHR) and the U.S. Department of Interior National Park Service (DOI-NPS)  through materially false representations in connection with the scheme set forth above, did knowingly cause to be transmitted, in interstate commerce, by means of wire communications, certain writings, signs, signals and sounds, to wit: on or about April 3, 2009, the defendant authorized the payment of the $2,250 application fee for the 1509 Belleville Street Part 3 Historic Preservation Certification Applications by using American Express Company account number ***********1015.  As part of that transaction on or about April 22, 2009, the

11

defendant's payment was processed by and through the American Express Company in Phoenix, Arizona and the Fifth Third Bank (the credit card processor for the United States Treasury Department) located in Cincinnati, Ohio. As a result, the defendant's $2,250 payment was processed across state lines ultimately deposited with the United States Treasury Department account associated with DOI-NPS. FRENCH agrees that this payment was processed in interstate commerce by means of wire communications across state lines. This interstate transmission had been caused by and anticipated by the defendant in connection with his submission of the fraudulent rehabilitation tax credit information. Furthermore, the application fee payment was a necessary step in the federal tax credit approval process.

18.    FRENCH agrees and stipulates that in connection with the scheme described above, he acted with the intent to defraud both the VDHR and DOI-NPS to receive inflated tax credits for 1509 Belleville Street. As described in paragraph 16, these representations made by the defendant were material and resulted in him fraudulently receiving approximately $555,976.35 in federal and state tax credits by inflating the rehabilitation expenses for 1509 Belleville Street. As further describe below, the defendant then sold a significant portion of those tax credits to individual and corporate investors in exchange for United States currency.

**Unlawful Monetary Transaction in Connection with 1509 Belleville Street Rehabilitation Project (Count 2)**

19.    In connection with and in furtherance of this scheme to defraud, FRENCH sold the state and federal tax credits for 1509 Belleville Street to various investors, including:

- On or about February 17, 2009, various individual investors paid the defendant approximately $228,800 in exchange for the purchase of state tax credits related to 1509 Belleville Street. These funds were deposited

12

into the 1509 Belleville Street Holdings, LLC business checking account (ending in 4612) at First Market Bank (now known as Union First Market Bank). As part of the investment process, FRENCH caused the mailing via United States mail of subscription agreements to the individual investors. Those investors, in turn, executed the subscription agreements and returned those documents along with their investment funds to the defendant. On or about April 3, 2009, the defendant transferred approximately $218,000 of these funds to his personal money market savings account (ending in 9361) at First Market Bank.

20.     For the conduct charged in Count 2 of the information, FRENCH agrees that on or about April 3, 2009, in the Eastern District of Virginia, he did knowingly engage in a monetary transaction by, through, and to a financial institution, which affected interstate commerce. Specifically, FRENCH knew that the funds maintained in 1509 Belleville Street Holdings, LLC business checking account (ending in 4612) at First Market Bank had previously been received in connection with the rehabilitation tax credit scheme described above. Accordingly, the funds referenced in Count 2 of the information had been derived from a specified unlawful activity, namely mail fraud, in violation of 18 U.S.C. § 1341. After receiving those funds, the defendant caused the transfer of approximately $218,000 from the 1509 Belleville Street Holdings LLC business check account at First Market Bank (ending in 4612) to his personal money market savings account at First Market Bank (ending in 9361). At all relevant times to these transactions, First Market Bank was insured by the Federal Deposit Insurance Corporation (FDIC). FRENCH stipulates that this transaction affected interstate

13

commerce by being handled by and through a financial institution (as defined at 18 U.S.C. § 1956(c)(6)) that operated in interstate commerce and involved criminally-derived property valued at over $10,000.

Respectfully Submitted,

NEIL H. MACBRIDE
UNITED STATES ATTORNEY

By: _____
Michael R. Gill
Assistant United States Attorney
Main Street Centre
600 E. Main Street, Suite 1800
Richmond, Virginia 23219-2447
(804) 819-5443

By: _____
Patrick Dorgan
Shannon Dion
Special Assistant United States Attorneys
Assistant Attorney Generals
Office of the Attorney General
900 E. Main Street
Richmond, VA 23219
(804) 786-1922

14

After consulting with my attorney and pursuant to the plea agreement entered into this date between the defendant JUSTIN GLYNN FRENCH and the United States, I hereby stipulate that the above Statement of Facts are true and accurate, and that had the matter proceeded to trial, the United States could prove these facts beyond a reasonable doubt.

JUSTIN GLYNN FRENCH
Defendant

I am JUSTIN GLYNN FRENCH'S attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

John K. Honey, Jr.
Counsel for Defendant

15