# TAVENNER & BERAN, PLC

### ATTORNEYS AT LAW

Lynn L. Tavenner
EMAIL: LTAVENNER@TB-LAWFIRM.COM

20 NORTH EIGHTH STREET, SECOND FLOOR
RICHMOND, VIRGINIA 23219
TELEPHONE: (804) 783-8300
FACSIMILE: (804) 783-0178

FILE NUMBER: 00900.001

May 6, 2011

Fernando Galindo, Clerk
United States District Court
Eastern District of Virginia
701 East Broad Street, Suite 3000
Richmond, VA  23219

      Re: United States v. French, Case No. 3:11CR017

Dear Mr. Galindo:

      Pursuant to various published notices, please find enclosed herewith the Bankruptcy Trustee's Verified Petition Pursuant to 21 U.S.C. § 853, which I ask that you appropriately file in the referenced case.  I am submitting this petition in my capacity as the Interim Trustee appointed in the Chapter 7 bankruptcy case of Justin Glynn French, United States Bankruptcy Court for the Eastern District of Virginia, Case No. 11-31954-DOT.

      Thank you.  Please contact me with any questions.

Sincerely,

/s/ Lynn L. Tavenner

Lynn L. Tavenner
Interim Trustee of the Estate of Justin Glynn French

LLT/slt
Enclosure

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
(RICHMOND DIVISON)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal No. 3:11CR017 |
| JUSTIN GLYNN FRENCH | ) | |
| | ) | |
| Defendant | ) | |

**BANKRUPTCY TRUSTEE'S**
**VERIFIED PETITION PURSUANT TO 21 U.S.C. § 853**

Comes now, Lynn L. Tavenner, Esquire, and submits this petition (the "Petition") in her

capacity as Interim Trustee (the "Trustee") appointed in the Chapter 7 bankruptcy case of Justin

Glenn French, United States Bankruptcy Court for the Eastern District of Virginia Case No. 11-

31954-DOT (the "Bankruptcy Case") on behalf of the creditors of Justin Glynn French ("French

and/or the "Debtor") and hereby (i) asserts, pursuant to 21 U.S.C. § 853(n) and Fed. R. Crim. P.

§ 32.2,  the bankruptcy estate's legal interest in the property forfeited in the above-captioned

matter and (ii) petitions this Court for a hearing to adjudicate the validity of the same.[1]  In

support of the position that the Trustee should receive the forfeited property and/or any proceeds

there from in this matter for the benefit of the bankruptcy estate, the Trustee states as follows:

1.      On March 24, 2011, Paragon Commercial Bank ("Paragon Bank"), Citizens Bank

& Trust Company ("Citizens Bank") and Franklin Federal Savings Bank ("Franklin Federal"),

by certifying under penalty of perjury that each held noncontingent and undisputed claims

against French, instituted an involuntary bankruptcy petition against French under Chapter 7 of

---

[1] The Debtor has not yet filed his Statement of Financial Affairs or Schedules of Assets and Liabilities as required by the Bankruptcy Code.  Furthermore, the Trustee has not had an opportunity to examine the Debtor with respect to the same at a meeting of creditors held pursuant to 11 U.S.C. § 341(a).  In fact the Office of the United States Trustee, which oversees the administration of bankruptcy cases and is an arm of the United States Department of Justice, has not even scheduled the same.  Because the Trustee does not yet have necessary information to fulfill all of her duties under the Bankruptcy Code, nor to completely assess French's assets and liabilities, the Trustee reserves the right to amend or supplement the claims made herein upon the discovery of additional information to support this Petition.

the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia

(the "Bankruptcy Court"), Case No. 11-31954-DOT styled "In re: Justin Glynn French."   French

answered the same and, thereafter, the Bankruptcy Court entered an Order of Relief on April 26,

2011.

2.      On April 28, 2011, the Bankruptcy Court appointed the Trustee[2] to serve as

interim trustee for the bankruptcy estate (the "Estate") of the Debtor.  Pursuant to 11 U.S.C.

§704, among the duties of the Trustee is (a) investigation of the financial affairs of the Debtor;

(b) collection and reduction to money of property of the Estate as prescribed in 11 U.S.C. §541

upon the commencement of the Bankruptcy case; and (c) to make final report and account of the

administration of the Estate and distribution of Estate assets.

3.      While no notice to creditors has yet been transmitted by the Bankruptcy Court

providing parties the ability to assert claims against French, the verified claims of the bankruptcy

petitioning creditors, Paragon Bank, Citizens Bank, and Franklin Federal total in principal

amount in excess of $2,473,000.00.  Furthermore, in the early stages of the Bankruptcy Case,

two additional law firms have already filed notices of appearance on behalf of other parties.

---

[2] On or about April 15, 2011, pursuant to an order entered by the United States Bankruptcy Court, Bruce H. Matson, Esquire, was appointed as interim trustee on an emergency basis to, among other things, address issues related to this proceeding.  Thereafter, Mr. Matson resigned as trustee and Ms. Tavenner was appointed.  In so ordering an emergency appointment of an interim trustee, the Honorable Douglas O. Tice, Jr. stated,

> All right. Thank you Mr. Baldwin.  I don't need to hear anymore argument.
>
> Mr. Baldwin makes a very eloquent argument, however, it seems to me completely overlooks the fact that we have a pending and voluntary [sic] bankruptcy in which a trustee would be appointed.  The bankruptcy code gives us the situation – the Court the opportunity to appoint a trustee to investigate to see if there's anything that could be done on behalf of the general creditors.
>
> I don't buy the argument that the motion claims that the U.S. Attorney's Office is incompetent, or I don't buy into this fact that this is somehow pinning the bankruptcy court against the district court.  I wouldn't envy the trustee carrying out its duties in this case, but it's obvious to the Court that there should be a trustee as I'm going to grant the motion.

A true and accurate copy of the transcript of the Bankruptcy Court's hearing held on April 14, 2011 in the Bankruptcy Court is attached hereto as Exhibit C.

2

4.       As this Court is aware, the United States of America (the "United States") obtained felony convictions against French on charges of wire fraud and engaging in unlawful money transactions, to which French has pled guilty, and in the course of the same French has agreed to a judgment in the amount of $7,000,000 and the United States has suggested to this Court that the victims' losses there from could be in excess of $11,000,000.  While the Trustee has not had an opportunity to assess each individual victim's loss and does not expect or seek to do so in the context of this Court proceeding, she believes that the victims of such crimes are likely among French's bankruptcy creditors as well.  This Court, at French's sentencing hearing held on May 3, 2011, appeared to recognize an overlap between victims of French's crime and unsecured creditors in the Bankruptcy Case when referencing fraudulent loans and misrepresentations and overstated amounts.[3]

5.       The United States and French entered into a Plea Agreement, by which it appears the United States may have obtained from French all, or substantially all, of French's assets. French's assets are the subject of multiple preliminary orders of forfeiture entered by this Court in the above-captioned case.  *See* preliminary forfeiture orders attached hereto as collective Exhibit A.

6.       The United States gave public notice of its forfeitures through four separate notices first published on March 8 (1 notice), March 23 (one notice), and March 24 (2 notices) on the www.forfeiture.gov website, requiring any third-party challenges to be raised within sixty (60) days of said publications.  *See* four notices of forfeiture attached hereto as collective Exhibit B.

7.       On behalf of the Estate, the Trustee, upon information and belief, asserts that many, if not all of the forfeited assets, have insufficient connection to French's crimes to justify

---

[3]   The Trustee has not yet been able to obtain a copy of the transcript of said Sentencing Hearing and is basing this representation on notes taken while attending the Sentencing Hearing.

their forfeiture, in that the United States cannot trace the forfeited property to the proceeds of French's offenses.  Accordingly, the Trustee asserts an interest in all the assets that are the subject of these forfeitures and believes that the Estate's interest is superior to that of French.  As a result, the United States takes such assets subject to the Trustee/Estate's interests.

8.      By way of example, and subject to the Trustee's further investigation, the Trustee submits that by operation of law, under 11 U.S.C. § 544, the "strong arm clause" of the Bankruptcy Code, the Trustee is empowered with the rights of a judicial lien creditor and the rights of a bona fide purchaser of real property.  In addition, by operation of law under other avoiding powers ascribed by 11 U.S.C. § 545, 547, 548 or 553, the Trustee may recover transfers made by the Debtor prior to the Order for Relief, including preferential, fraudulent and/or voluntary transfers of property that occurred prior to the criminal acts giving rise to the Plea Agreement.  Because of such rights, the Trustee submits that she, on behalf of the Estate, has a superior right in much if not all of the forfeited assets.

9.      Moreover, the Trustee respectfully suggests that all of those assets can be efficiently administered and distributed through the Bankruptcy Court. Given the established procedural framework of the Bankruptcy Code, and the role of the Trustee with respect to the garnering and distribution of the assets of debtors, an appropriate forum for the administration and distribution of the assets of French is the Bankruptcy Court.

10.     The Trustee believes that the respective federal agencies should work together in the interest of all parties that have been harmed by French to remedy in the best possible way the harm inflicted by French on all innocent third parties.  As the United States District Court for the Eastern District of New York (the "New York District Court") recognized in a case under similar circumstances, the issues "are best addressed through coordination and cooperation of all

concerned." *See, United States v. Dreier*, 09 Cr. 085, p.1 (SDNY Feb. 5, 2010)[4] (memorandum order) (the "Dreier Order") (a copy of the Dreier Order is attached hereto as Exhibit D).  As the New York District Court further articulated:

> An under-appreciated evil of substantial frauds like those of Marc Dreier is how they pit their victims against one another.  Where, as here, the funds remaining after the fraud is uncovered are insufficient to make whole Dreier's numerous victims and creditors, these unfortunates are left to squabble over who should get what.  In this case, moreover, resolution of these competing claims involves consideration of three bodies of law – criminal law, securities law, and bankruptcy law – that cannot always be reconciled without some friction.

*See* Dreier Order, p.1.  In the *Dreier* matter, the three judges convened a joint hearing to urge that those seeking to remedy victims and other creditors alike coordinate and cooperate to address the inherent tensions.  As a result of said hearing, the United States Attorney Office, the Securities and Exchange Commission, the bankruptcy trustees and other impacted parties reached a global resolution concerning which assets would be administered through the Bankruptcy Court system and those that would be administered through the District Court system, as well as an agreement regarding sharing information.

11.     The Trustee asserts the victims and other creditors of French's illegal and immoral schemes would benefit greatly from cooperation and coordination between and among the various federal and state representatives/agencies.  To that end, the Trustee is requesting a joint hearing with this Court and the Bankruptcy Court to encourage cooperation and a global resolution for the benefit of French's victims and other creditors.  Joint hearings and coordination between the District Court and the Bankruptcy Court is not a novel concept to the Eastern District of Virginia.  In fact, the Eastern District of Virginia established a precedent and obtained national recognition when the Honorable Robert R. Merhige, Jr. and the Honorable Blackwell Shelley, II coordinated efforts and conducted joint hearings resolving issues related to

---

[4]  While there are pending appeals and other issues that are still unresolved in *Dreier* matters, the concept of mutual cooperation has not been attacked.

the bankruptcy case of *A.H. Robins Co*.  While Judge Merhige and Judge Shelley were not

confronted with identical issues before this Court, their efforts demonstrate a precedent of mutual

cooperation and coordination to achieve efficient and effective administration of matters

involving overlapping federal jurisdictions.

## PRAYER FOR RELIEF

Wherefore, pursuant to 21 U.S.C. § 853(n) and to preserve the rights of the Estate, the

Trustee respectfully requests that this Court enter an order distributing the assets forfeited in this

case, and any proceeds thereof, to the Trustee.  In the alternative, Trustee respectfully requests

this Court hold an ancillary proceeding to determine the Estate's interest in the forfeited property

in this case and address the most efficient process for administration of the forfeited property.

To the extent the Court believes it appropriate to *sua sponte* convene a joint hearing with the

Bankruptcy Court to address these issues and related matters, the Trustee welcomes the same.

Dated:  May 6, 2011                                    Respectfully submitted,

                                                        LYNN L. TAVENNER, TRUSTEE

                                                        By:___/s/ Lynn L. Tavenner_____
                                                              Trustee for the Bankruptcy Estate
                                                              Of Justin Glynn French

Lynn L. Tavenner, Esquire (Va. Bar No. 30083)
Paula S. Beran, Esquire (Va. Bar No. 34679)
Tavenner & Beran, PLC
20 North 8th Street, Second Floor
Richmond, Virginia  23219
Telephone: (804) 783-8300
Telecopy: (804) 783-0178

**<u>VERIFICATION</u>**

Under penalty of perjury, I Lynn L. Tavenner, as Chapter 7 Trustee, declare that I have read and reviewed the foregoing and verify that the foregoing is true and correct to the best of my knowledge.

_____*/s/ Lynn L. Tavenner*_____
Lynn L. Tavenner, Chapter 7 Trustee
of the Estate of Justin Glynn French

## CERTIFICATE OF SERVICE

I certify that on this the 6th day of May, 2011 the foregoing Bankruptcy Trustee's Verified Petition Pursuant To 21 U.S.C. § 853 was sent via email and/or first-class mail, postage prepaid to the following:

John K. Honey, Esq.
William R. Baldwin, Esq.
Marchant, Thorsen, Honey,
   Baldwin, and Meyer, L.L.P.
5600 Grove Avenue
Richmond, Virginia  23226-2102

Laura Colombel Marshall
Assistant United States Attorney
Office of the Attorney General
600 East Main Street
Richmond, VA 23219

W. Ashley Burgess
Sands Anderson, P.C.
1111 E. Main Street
Richmond, Virginia  23218

Frank F. Rennie, Jr.
1930 Huguenot Road
P.O. Box 35655
Richmond, Virginia  23235

Franklin Federal Savings Bank
Canfield, Baer & Heller, LLP
c/o Robert A. Canfield
2201 Libbie Avenue, Suite 200
Richmond, Virginia  23230

Citizen Bank & Trust Company
c/o Frank F. Rennie, IV, Esq.
CowanGates, PC
1930 Huguenot Road
Richmond, Virginia  23235

Office of the U.S. Trustee
701 East Broad St., Ste 4304
Richmond, Virginia  23219

Paragon Commercial Bank
Spotts Fain P.C.
P.O. Box 1555
411 E. Franklin St., Ste. 600
Richmond, Virginia  23219


    */s/ Lynn L. Tavenner*
    Lynn L. Tavenner

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 3:11CR017 |
| | ) | |
| JUSTIN GLYNN FRENCH, | ) | |
| | ) | |
| Defendant. | ) | |

## FIRST CONSENT ORDER OF FORFEITURE

BASED UPON the plea agreement entered into between the United States of America

and the defendant and the stipulations set forth below, and finding that there is a requisite nexus

between the property listed below and the offense to which the defendant has pled guilty, and that

the defendant has an interest in said property, IT IS HEREBY ORDERED:

1.   That pursuant to 18 U.S.C. § 981(a)(1)(C), as incorporated by 28 U.S.C. § 2461(c)

and 21 U.S.C. § 853, the following property is forfeited to the United States:

**The sum of $7,000,000.00 representing the proceeds of the offense outlined in Count One of this Information;**

**The sum of $25,000.00 as evidenced by check number 22333 payable to "Justin French" issued by Seminole Hardrock Hotel & Casino Hollywood, or the proceeds thereof currently held by the law firm of Marchant, Thorsen, Honey, Baldwin & Meyer LLP ;**

**72.7417 shares of stock in Synergy Systems, Inc., as evidenced by a stock certificate in the name of "Justin G. French;"**

**500 shares of Hampton Roads Bankshares, Inc., as evidenced by a stock certificate in the name of "Justin G. French;"**

**The entire contents of Union First Market Account No. 4011745082 in the name of "1717 Summit Avenue Holdings LLC;"**

**EXHIBIT A**

The entire contents of Union First Market Account No. 4011609627 in the name of "614–620 North 28th Street Holdings LLC;"

The entire contents of Union First Market Account No. 4011611961 in the name of "3017 M Street Holdings LLC;"

The entire contents of Union First Market Account No. 4011611979 in the name of "2306-2310 Parkwood Avenue Holdings LLC;"

The entire contents of Union First Market Account No. 4011611987 in the name of "2201-2203 West Cary Street Holdings LLC;"

The entire contents of Union First Market Account No. 4011745017 in the name of "2324 Parkwood Avenue Holdings LLC;"

The entire contents of Union First Market Account No. 4011745047 in the name of "1707 Summit Avenue Holdings LLC;"

The entire contents of Union First Market Account No. 4011086255 in the name of "6-10 Robinson Street Holdings LLC;"

The entire contents of Union First Market Account No. 4011502855 in the name of "2601 Floyd Avenue Holdings LLC;"

The entire contents of People's Bank of Virginia Account No. 1002-210-4 in the name of "Justin G. French;"

Real property and improvements, known as 330 Oak Lane, Richmond, Virginia 23226;

Assorted artwork more particularly described in Attachment A;

Assorted furniture more particularly described in Attachment B; and

Personal property of French Consulting and/or Justin French previously located at 1312 and 1314 East Cary Street, Richmond, Virginia, more particularly described in Attachment C.

2.    The United States, or its agent, may take possession and maintain custody of the

above-described tangible property.  Any entity or financial institution named in this order is

directed to liquidate the asset and convert same to a check made payable to "United States

2

Marshal" and deliver the check to the United States Attorney's Office, Attn. AUSA Laura Marshall, 600 East Main Street, Suite 1800, Richmond, Virginia 23219.

3.  A judgment in the amount of $7,000,000.00, shall be included in the sentence of the defendant, and the United States Department of Justice may take steps to collect said judgment from any assets of the defendant, in accordance with the substitute asset provisions of 21 U.S.C. § 853(p).

4.  The proceeds obtained from the forfeiture of any of the above-named assets, as well as any future substitute assets, shall be credited against the $7,000,000.00 monetary judgment to be imposed against the defendant.

5.  The United States shall, to the extent practicable, provide direct written notice to any persons known to have alleged an interest in any seized property, and shall publish notice of this order in accordance with Federal Rule of Criminal Procedure 32.2(b)(6).

6.  Any person, other than the defendant, asserting any legal interest in the property may, within thirty days of the publication of notice or the receipt of notice, whichever is earlier, petition the court for a hearing to adjudicate the validity of their alleged interest in the property.

7.  Following the Court's disposition of all timely petitions filed, a final order of forfeiture shall be entered. If no third party files a timely petition, this order shall become the *final* order of forfeiture, as provided by Fed. R. Crim. P. 32.2(c)(2), and the United States shall have clear title to the property, and shall dispose of the property in accordance with law.

_1/27/11_
Date

_/s/_
John A. Gibney, Jr.
United States District Judge

3

The parties stipulate and agree that the aforementioned assets constitute property derived from or proceeds obtained directly or indirectly from the violations of 18 U.S.C. § 1343, and are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), as incorporated by 28 U.S.C. § 2461(c), and 21 U.S.C. § 853. The defendant hereby waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

NEIL H. MACBRIDE
UNITED STATES ATTORNEY

Michael R. Gill
Laura Colombell Marshall
Assistant United States Attorneys

JUSTIN GLYNN FRENCH
Defendant

John K. Honey, Jr., Esq.
Counsel for Defendant

4

**ATTACHMENT A**
**(ARTWORK)**

| ARTIST | DESCRIPTION |
|---|---|
| Nell Blaine | Drying Flowers I, 1989 - india ink and graphite, 14 x 11", signed |
| Robert De Niro Sr. | Figure Holding Head, 1979 - charcoal on paper, 25 3/4 x 19 3/4", signed |
| Robert De Niro Sr. | Two Seated Women, n.d. - charcoal on paper, 25 1/2 x 19 5/8", signed |
| Wolf Kahn | Dormer Window, 1972 - oil on canvas, 40 x 50", signed |
| Fred Crist | Pillars of Jazz, 2004 - forged steele, 26 x 12 x 6", signed |
| Fred Crist | Stacked Pillar #16 (green), 2004 - cast bronze, 18 x 16 x 12", signed |
| David Freed | River Fragment, Deep Cold, 2004 - mixed media, 50 x 12", signed |
| David Freed | River Fragment, Ice and Snow, 2004 - mixed media, 50 x 12", signed |
| Robert Stuart | Golden Gates, 2003 - oil, wax medium on canvas, 60 x 48", signed |
| Steve Bickley | Rosedale, 2002 - steel, 8.1 x 8w x 16" h |
| Philip Geiger | July 9 am, 2004 - oil on panel, 24 x 28", signed |
| Laura Letinsky | Untitled #51 (from the I Did Not Remember I Had Forgotten Series), 2002 - chromogenic print, 23 3/4 x 29", edition 1 of 5, signed |
| Laura Letinsky | Untitled #59 (from the I Did Not Remember I Had Forgotten Series), 2002 - chromogenic print, 23 3/4 x 29", edition 1 of 5, signed |
| Carlton Newton | Untitled, 1999 - industrial gypsum cement, fiberglass, galvanized steel wire, dimensions variable |

| ARTIST | DESCRIPTION |
|---|---|
| Roxy Paine | Scumak (white), 2002 - linear low-density polyethylene, dimensions variable |
| Heide Trepanier | Tempest, 2004 - enamel and canvas on board, 60 x 60", signed |
| Steven Bickley | Kiskya (Large Scale Sculpture), 2005 - stainless steel, 9' x 9' x 3" |
| Alyson Shotz | Floating Space #2, 2005 - cut plastic fresnel lens sheets, staples, dimensions variable |
| Ron Johnson | Casual Affair, 2005 - mylar, graphite, acrylic, 240 x 42" |
| ~~Sally Bowring~~ | ~~June, 2005 - acrylic on panel, 40 x 40"~~ |
| Nathan Oliveira | Angel Rocker, 2005 - color sugar lift aquatint with drypoint, 52 x 41:, edition 15/40, signed |
| Henri Matisse | Danseuse (Dix Danseuses), 1926 - lithograph, 24 x 32", edition of 130, signed and numbered |
| Manuel Neri | San Felipe Figure Study No. 2, 2002 - waterbased pigments, charcoal on paper, 23 1/2 x 18", signed |
| Lois Dodd | Another Pond Shape, 2005 - oil on masonite, 18 x 16", signed |
| Cy Twombly | Natural History, Part I Mushrooms, No. II, 1974, mixed media, 30 x 22", edition 94/98, signed |
| Carroll Dunham | Untitled (Sept 14, 2006) (one), 2006 - monotype with hand additions in watercolor, 64 x 50", signed |
| Richard Roth | Elegant Trogon, 2007 - flasche on birch plywood, 11 3/8 x 8 x 4", signed by the artist on verso |
| Nell Blaine | Hudson, Riverside, 1962 - pastel and watercolor on paper, 14 x 20", signed |
| Donald Baechler | Mint, 2007 - silkscreen, 57 3/4 x 40 1/2", edition of 69, signed |

2

| ARTIST | DESCRIPTION |
|--------|-------------|
| Alyson Shotz | 3 piece, Three Steps Closer Than Infinity, 2007 - lithograph on mirrorized mylar in custom made polished Plixiglas cases designed by the artist, 24 x 30 x 3", edition of 9 |
| John Baldessari | Person With Guitar (Pink), 2004 - 3-layer, 5-color screenprint construction, laminated to Sintra and hand-cut, 34 1/2 x 42 x 3", edition 21 of 45, signed |
| Janet Decover | Woon, 2007 - monotype, 39 x 24", signed by the artist on verso |
| Gerald Donato | Some Day My Prince Will Come, 1971 - photo lithograph, edition 14 of 18, 22.5 x 33.5", signed, titled, and numbered |
| Gerald Donato | Come on in, 1973 - photo lithograph, edition 35 of 40, 26.5 x 33.5", signed, titled, and numbered |
| Gerald Donato | Logans Port Indiana, 1972 - photo lithograph, edition 13 of 17, 23.5 x 32.5", signed, titled, and numbered |
| Ron Johnson | Pull The String, 2009 - acrylic on panel, 30 x 16", signed |
| Kiara Pelissier | Pink Glass Bowl |
| Kiara Pelissier | Glass - Pink Bubble |
| Kiara Pelissier | Glass Sculpture - Commissioned Piece |
| Steve Bickley | Cloud, 2005 - stainless steel, 8 x 8 1/2" |
| Ron Johnson | Elemental Return, 2004 - acrylic and silk, 26 x 26 1/2" |
| Stephen Fox | Untitled (Series of 3 Views of Downtown Richmond), 2004 - giclee print, 17 1/2 x 20" |
| Travis Fullerton | Gravelly Point, Arlington, Virginia, 2007 - from the Combined Alterations series, monotype, 20 3/4 x 86" |
| Travis Fullerton | Floodwall 1 - From the Sustain series, Slenium-toned silver print |
| Travis Fullerton | Floodwall 2 - From the Sustain series, Slenium-toned silver print |

| ARTIST | DESCRIPTION |
|--------|-------------|
| Ed Trask | Dairy (nfd) |
| Ron Johnson | Yellow, 4 x 6 |
| Ron Johnson | Blue Canvas, approximately 18 inches |

## ATTACHMENT B
### (FURNITURE)

| MAKER | DESCRIPTION |
|---|---|
| Fendi | Simplicio 3 white leather sofa |
| Fendi | (2) Black lacquered chairs with swarovski crystal knobs |
| Fendi | (2) White leather armchairs (Diva) |
| Fendi | Servus w/ Tray in black, chromed metal legs |
| Fendi | Black FF 78.7 x 188 New Zealand wood, hand tufted rug |
| Anthony Bronza | Bench, 2006 - American walnut, 17 x 40 x 17 1/2" |

**ATTACHMENT C**
**(PROPERTY PREVIOUSLY LOCATED AT 1312-1314 EAST CARY STREET)**


A painting by Artist Gerald Donato, Untitled (Mask), 1987 - acrylic and oil on canvas, 76 1/2 x 66 1/2", signed;

Freestanding stainless steel bar and appliances;

Custom conference table made of Cypress wood;

Furniture; and

Assorted artwork.

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

F I L E D

MAR - 4 2011

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 3:11CR017 |
| | ) | |
| JUSTIN GLYNN FRENCH, | ) | |
| | ) | |
| Defendant. | ) | |

## *CORRECTED* FIRST CONSENT ORDER OF FORFEITURE

BASED UPON the plea agreement entered into between the United States of America

and the defendant and the stipulations set forth below, and finding that there is a requisite nexus

between the property listed below and the offense to which the defendant has pled guilty, and that

the defendant has an interest in said property, IT IS HEREBY ORDERED:

1.   That pursuant to 18 U.S.C. § 981(a)(1)(C), as incorporated by 28 U.S.C. § 2461(c)

and 21 U.S.C. § 853, the following property is forfeited to the United States:

**The sum of $7,000,000.00 representing the proceeds of the offense outlined in Count One of this Information;**

**The sum of $25,000.00 as evidenced by check number 22333 payable to "Justin French" issued by Seminole Hardrock Hotel & Casino Hollywood, or the proceeds thereof currently held by the law firm of Marchant, Thorsen, Honey, Baldwin & Meyer LLP ;**

**72.7417 shares of stock in Synergy Systems, Inc., as evidenced by a stock certificate in the name of "Justin G. French;"**

**500 shares of Hampton Roads Bankshares, Inc., as evidenced by a stock certificate in the name of "Justin G. French;"**

**The entire contents of Union First Market Account No. 4011745082 in the name of "1717 Summit Avenue Holdings LLC;"**

**The entire contents of Union First Market Account No. 4011609627 in the name of "614–620 North 28th Street Holdings LLC;"**

**The entire contents of Union First Market Account No. 4011611961 in the name of "3017 M Street Holdings LLC;"**

**The entire contents of Union First Market Account No. 4011611979 in the name of "2306-2310 Parkwood Avenue Holdings LLC;"**

**The entire contents of Union First Market Account No. 4011611987 in the name of "2201-2203 West Cary Street Holdings LLC;"**

**The entire contents of Union First Market Account No. 4011745017 in the name of "2324 Parkwood Avenue Holdings LLC;"**

**The entire contents of Union First Market Account No. 4011745074 in the name of "1707 Summit Avenue Holdings LLC;"**

**The entire contents of Union First Market Account No. 4011086255 in the name of "6-10 Robinson Street Holdings LLC;"**

**The entire contents of Union First Market Account No. 4011502855 in the name of "2601 Floyd Avenue Holdings LLC;"**

**The entire contents of People's Bank of Virginia Account No. 1002-210-4 in the name of "Justin G. French;"**

**Real property and improvements, known as 330 Oak Lane, Richmond, Virginia 23226;**

**Assorted artwork more particularly described in Attachment A;**

**Assorted furniture more particularly described in Attachment B; and**

**Personal property of French Consulting and/or Justin French previously located at 1312 and 1314 East Cary Street, Richmond, Virginia, more particularly described in Attachment C.**

2.     The United States, or its agent, may take possession and maintain custody of the

above-described tangible property.  Any entity or financial institution named in this order is

directed to liquidate the asset and convert same to a check made payable to "United States

2

Marshal" and deliver the check to the United States Attorney's Office, Attn. AUSA Laura

Marshall, 600 East Main Street, Suite 1800, Richmond, Virginia 23219.

3.    A judgment in the amount of $7,000,000.00, shall be included in the sentence of the

defendant, and the United States Department of Justice may take steps to collect said judgment

from any assets of the defendant, in accordance with the substitute asset provisions of 21 U.S.C. §

853(p).

4.    The proceeds obtained from the forfeiture of any of the above-named assets, as well as

any future substitute assets, shall be credited against the $7,000,000.00 monetary judgment to be

imposed against the defendant.

5.    The United States shall, to the extent practicable, provide direct written notice to any

persons known to have alleged an interest in any seized property, and shall publish notice of this

order in accordance with Federal Rule of Criminal Procedure 32.2(b)(6).

6.    Any person, other than the defendant, asserting any legal interest in the property may,

within thirty days of the publication of notice or the receipt of notice, whichever is earlier, petition

the court for a hearing to adjudicate the validity of their alleged interest in the property.

7.    Following the Court's disposition of all timely petitions filed, a final order of

forfeiture shall be entered.   If no third party files a timely petition, this order shall become the

*final* order of forfeiture, as provided by Fed. R. Crim. P. 32.2(c)(2), and the United States shall

have clear title to the property, and shall dispose of the property in accordance with law.

3

This Order shall be deemed entered NUNC PRO TUNC the date of the original First

Consent Order of Forfeiture.

_/s/_
John A. Gibney, Jr.,
United States District Judge

_____
Date

_____
UNITED STATES DISTRICT JUDGE

The parties stipulate and agree that the aforementioned assets constitute property derived from or proceeds obtained directly or indirectly from the violations of 18 U.S.C. § 1343, and are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), as incorporated by 28 U.S.C. § 2461(c), and 21 U.S.C. § 853. The defendant hereby waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

NEIL H. MACBRIDE
UNITED STATES ATTORNEY

_____
Michael R. Gill
Laura Colombell Marshall
Assistant United States Attorneys

_____
JUSTIN GLYNN FRENCH
Defendant

_____ VSB 16938
John K. Honey, Jr., Esq.
Counsel for Defendant

4

## ATTACHMENT A
## (ARTWORK)

| ARTIST | DESCRIPTION |
|---|---|
| Nell Blaine | Drying Flowers I, 1989 - india ink and graphite, 14 x 11", signed |
| Robert De Niro Sr. | Figure Holding Head, 1979 - charcoal on paper, 25 3/4 x 19 3/4", signed |
| Robert De Niro Sr. | Two Seated Women, n.d. - charcoal on paper, 25 1/2 x 19 5/8", signed |
| Wolf Kahn | Dormer Window, 1972 - oil on canvas, 40 x 50", signed |
| Fred Crist | Pillars of Jazz, 2004 - forged steele, 26 x 12 x 6", signed |
| Fred Crist | Stacked Pillar #16 (green), 2004 - cast bronze, 18 x 16 x 12", signed |
| David Freed | River Fragment, Deep Cold, 2004 - mixed media, 50 x 12", signed |
| David Freed | River Fragment, Ice and Snow, 2004 - mixed media, 50 x 12", signed |
| Robert Stuart | Golden Gates, 2003 - oil, wax medium on canvas, 60 x 48", signed |
| Steve Bickley | Rosedale, 2002 - steel, 8.1 x 8w x 16" h |
| Philip Geiger | July 9 am, 2004 - oil on panel, 24 x 28", signed |
| Laura Letinsky | Untitled #51 (from the I Did Not Remember I Had Forgotten Series), 2002 - chromogenic print, 23 3/4 x 29", edition 1 of 5, signed |
| Laura Letinsky | Untitled #59 (from the I Did Not Remember I Had Forgotten Series), 2002 - chromogenic print, 23 3/4 x 29", edition 1 of 5, signed |
| Carlton Newton | Untitled, 1999 - industrial gypsum cement, fiberglass, galvanized steel wire, dimensions variable |

| ARTIST | DESCRIPTION |
|---|---|
| Roxy Paine | Scumak (white), 2002 - linear low-density polyethylene, dimensions variable |
| Heide Trepanier | Tempest, 2004 - enamel and canvas on board, 60 x 60", signed |
| Steven Bickley | Kiskya (Large Scale Sculpture), 2005 - stainless steel, 9' x 9' x 3" |
| Alyson Shotz | Floating Space #2, 2005 - cut plastic fresnel lens sheets, staples, dimensions variable |
| Ron Johnson | Casual Affair, 2005 - mylar, graphite, acrylic, 240 x 42" |
| Nathan Oliveira | Angel Rocker, 2005 - color sugar lift aquatint with drypoint, 52 x 41:, edition 15/40, signed |
| Henri Matisse | Danseuse (Dix Danseuses), 1926 - lithograph, 24 x 32", edition of 130, signed and numbered |
| Manuel Neri | San Felipe Figure Study No. 2, 2002 - waterbased pigments, charcoal on paper, 23 1/2 x 18", signed |
| Lois Dodd | Another Pond Shape, 2005 - oil on masonite, 18 x 16", signed |
| Cy Twombly | Natural History, Part I Mushrooms, No. II, 1974, mixed media, 30 x 22", edition 94/98, signed |
| Carroll Dunham | Untitled (Sept 14, 2006) (one), 2006 - monotype with hand additions in watercolor, 64 x 50", signed |
| Richard Roth | Elegant Trogon, 2007 - flasche on birch plywood, 11 3/8 x 8 x 4", signed by the artist on verso |
| Nell Blaine | Hudson, Riverside, 1962 - pastel and watercolor on paper, 14 x 20", signed |
| Donald Baechler | Mint, 2007 - silkscreen, 57 3/4 x 40 1/2", edition of 69, signed |

2

| ARTIST | DESCRIPTION |
|---|---|
| Alyson Shotz | 3 piece, Three Steps Closer Than Infinity, 2007 - lithograph on mirrorized mylar in custom made polished Plixiglas cases designed by the artist, 24 x 30 x 3", edition of 9 |
| John Baldessari | Person With Guitar (Pink), 2004 - 3-layer, 5-color screenprint construction, laminated to Sintra and hand-cut, 34 1/2 x 42 x 3", edition 21 of 45, signed |
| Janet Decover | Woon, 2007 - monotype, 39 x 24", signed by the artist on verso |
| Gerald Donato | Some Day My Prince Will Come, 1971 - photo lithograph, edition 14 of 18, 22.5 x 33.5", signed, titled, and numbered |
| Gerald Donato | Come on in, 1973 - photo lithograph, edition 35 of 40, 26.5 x 33.5", signed, titled, and numbered |
| Gerald Donato | Logans Port Indiana, 1972 - photo lithograph, edition 13 of 17, 23.5 x 32.5", signed, titled, and numbered |
| Ron Johnson | Pull The String, 2009 - acrylic on panel, 30 x 16", signed |
| Kiara Pelissier | Pink Glass Bowl |
| Kiara Pelissier | Glass - Pink Bubble |
| Kiara Pelissier | Glass Sculpture - Commissioned Piece |
| Steve Bickley | Cloud, 2005 - stainless steel, 8 x 8 1/2" |
| Ron Johnson | Who's Got It All Figured Out, 2004 - acrylic and silk, 26 x 26 1/2" |
| Stephen Fox | Untitled (Series of 3 Views of Downtown Richmond), 2004 - giclee print, 17 1/2 x 20" |
| Travis Fullerton | Gravelly Point, Arlington, Virginia, 2007 - from the Combined Alterations series, monotype, 20 3/4 x 86" |
| Travis Fullerton | Floodwall 1 - From the Sustain series, Slenium-toned silver print |
| Travis Fullerton | Floodwall 2 - From the Sustain series, Slenium-toned silver print |

| ARTIST | DESCRIPTION |
|---|---|
| Ed Trask | Dairy (nfd) |
| Ron Johnson | Tip of the Sun, 4 x 6 |
| Ron Johnson | Blue Canvas, approximately 18 inches |

## ATTACHMENT B
## (FURNITURE)

| MAKER | DESCRIPTION |
|---|---|
| Fendi | Simplicio 3 white leather sofa |
| Fendi | (2) Black lacquered chairs with swarovski crystal knobs |
| Fendi | (2) White leather armchairs (Diva) |
| Fendi | Servus w/ Tray in black, chromed metal legs |
| Fendi | Black FF 78.7 x 188 New Zealand wood, hand tufted rug |
| Anthony Bronza | Bench, 2006 - American walnut, 17 x 40 x 17 1/2" |

**ATTACHMENT C**
**(PROPERTY PREVIOUSLY LOCATED AT 1312-1314 EAST CARY STREET)**


A painting by Artist Gerald Donato, Untitled (Mask), 1987 - acrylic and oil on canvas, 76 1/2 x 66 1/2", signed;

Freestanding stainless steel bar and appliances;

Custom conference table made of Cypress wood;

Furniture; and

Assorted artwork.

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Richmond Division

MAR I 4 2011

UNITED STATES OF AMERICA )
)
v. ) CRIMINAL NO. 3:11CR017
)
JUSTIN GLYNN FRENCH, )
)
Defendant. )

## SECOND CONSENT ORDER OF FORFEITURE

BASED UPON the plea agreement entered into between the United States of America

and the defendant and the stipulations set forth below, and finding that there is a requisite nexus

between the property listed below and the offense to which the defendant has pled guilty, and

that the defendant has an interest in said property, IT IS HEREBY ORDERED:

1. That pursuant to 18 U.S.C. § 981(a)(1)(C), as incorporated by 28 U.S.C. § 2461(c)

and 21 U.S.C. § 853, the following property is forfeited to the United States:

**One hundred percent of the membership interest of Justin G. French, sole member of Chamberlayne Development, LLC, a Virginia limited liability company (Virginia LLC ID S253979-1);**

**One hundred percent of the membership interest of Justin G. French, sole member of 316 Mitchell Street, L.L.C., a Virginia limited liability company (Virginia LLC ID S273125-7); and**

**Assorted artwork more particularly described in Attachment A to this Order.**

2. The United States, or its agent, may take possession and maintain custody of the

above-described tangible property.

3. The proceeds obtained from the forfeiture of any of the above-named assets, as well

as any future substitute assets, shall be credited against the $7,000,000.00 monetary judgment

previously imposed against the defendant (Document 17).

4.     The United States shall, to the extent practicable, provide direct written notice to any persons known to have alleged an interest in any seized property, and shall publish notice of this order in accordance with Federal Rule of Criminal Procedure 32.2(b)(6).

5.     Any person, other than the defendant, asserting any legal interest in the property may, within thirty days of the publication of notice or the receipt of notice, whichever is earlier, petition the court for a hearing to adjudicate the validity of their alleged interest in the property.

6.     Following the Court's disposition of all timely petitions filed, a final order of forfeiture shall be entered.  If no third party files a timely petition, this order shall become the *final* order of forfeiture, as provided by Fed. R. Crim. P. 32.2(c)(2), and the United States shall have clear title to the property, and shall dispose of the property in accordance with law.

___3/14/11___
Date

/s/
John A. Gibney, Jr.
United States District Judge
_____
UNITED STATES DISTRICT JUDGE

The parties stipulate and agree that the aforementioned assets constitute property derived from or proceeds obtained directly or indirectly from the violations of 18 U.S.C. § 1343, and are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), as incorporated by 28 U.S.C. § 2461(c), and 21 U.S.C. § 853. The defendant hereby waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

NEIL H. MACBRIDE
UNITED STATES ATTORNEY

Michael R. Gill
Laura Colombell Marshall
Assistant United States Attorneys

John K. Honey, Jr., Esq.
William Baldwin, Esq. VSB 169 55
Counsel for Defendant

2

## ATTACHMENT A
## (ARTWORK)[1]

Artwork by David Freed, entitled "Aftermath with Fever," 2003 Etching & Relief, 28 X 22;

Artwork by Gerald Donato, entitled "Kisses Sweeter Than Wine" (Inventory - Picture #39);

Artwork by Ron Johnson (Inventory - Picture # 44);

Photograph by Artist Sally Mann described as black frame, black and white of forest and columns (Inventory - Picture # 63);

Photograph by Artist Sally Mann described as white frame, photo of clouded forest (Inventory - Picture # 64);

Photograph by Artist Sally Mann described as black frame, photo of dark scene (Inventory - Picture # 65);

Photograph by Artist Sally Mann described as white frame, photo of palm tree (Inventory - Picture #84);

Photograph by Artist Sally Mann described as white frame, photo of bricks (Inventory - Picture # 85);

Photograph, Artist Unknown, described as black frame, photo of Johnny Cash (Inventory - Picture #83);

Photograph, Artist Unknown, described as black frame, photo of Radiohead (Inventory - Picture #83);

Artwork by Trepanier, described as Black and Blue painting on white canvas (Inventory - Picture #66); and

Assorted Artwork, Artists Unknown (Inventory - Picture #s 73, 74, 75 and 76).

---

[1] References to Inventory is based on Inventory conducted by the United States Marshal Service on December 7, 2010.

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Richmond Division

MAY - 3 2011

CLERK, U.S. DISTRICT COURT
RICHMOND. VA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 3:11CR017 |
| | ) | |
| JUSTIN GLYNN FRENCH, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## THIRD PRELIMINARY ORDER OF FORFEITURE

BASED UPON the plea agreement entered into between the United States of America and the defendant and the stipulations set forth below, and finding that there is a requisite nexus between the property listed below and the offense to which the defendant has pled guilty, and that the defendant has an interest in said property, IT IS HEREBY ORDERED:

1. That pursuant to 18 U.S.C. § 981(a)(1)(C), as incorporated by 28 U.S.C. § 2461(c) and 21 U.S.C. § 853, the following property is forfeited to the United States as substitute assets to offset the monetary judgment of $7,000,000 imposed on January 24, 2011 (Documents 14 and 17):

a white gold Rolex Daytona watch;

JK630 black sculpture by artist Jae Ko;

"Elemental Return" by Ron Johnson, 2004 - acrylic and silk, 26 X 26 ½ canvas;

Pink glass piece (#2) by Kiara Pelissier;

**Two (2) federal style, mahogany benches by Harrison Higgins, Inc.;**

**Promissory note in the amount of $90,000.00 from Mark Gans to Justin French referencing 18-20 South Allen Street;**

**One hundred percent of the membership interest of Justin G. French, sole member of French Stockton, LLC, a Virginia limited liability company (Virginia LLC ID S176661-9);**

**One hundred percent of the membership interest of Justin G. French, sole member of Griffin French Alley, LLC, a Virginia limited liability company;**

**One hundred percent of the membership interest of Justin G. French, member of 1207 School Street, LLC, a Virginia limited liability company (Virginia LLC ID S255368-5); and**

**Real property and improvements known as 1415, 1417 and 1419 Bryan Street, Richmond, Virginia.**

2. The United States, or its agent, may take possession and maintain custody of the above-described tangible property.

3. The proceeds obtained from the forfeiture of any of the above-named assets, as well as any future substitute assets, shall be credited against the $7,000,000.00 monetary judgment previously imposed against the defendant (Document 17).

4. The United States shall, to the extent practicable, provide direct written notice to any persons known to have alleged an interest in any seized property, and shall publish notice of this order in accordance with Federal Rule of Criminal Procedure 32.2(b)(6).

5. Any person, other than the defendant, asserting any legal interest in the property may, within thirty days of the publication of notice or the receipt of notice, whichever is earlier, petition the court for a hearing to adjudicate the validity of their alleged interest in the property.

6. Following the Court's disposition of all timely petitions filed, a final order of forfeiture shall be entered. If no third party files a timely petition, this order shall become the *final* order of forfeiture, as provided by Fed. R. Crim. P. 32.2(c)(2), and the United States shall have clear title to the property, and shall dispose of the property in accordance with law.

_____/s/_____
John A. Gibney, Jr.
United States District Judge

_____5/3/11_____
Date

UNITED STATES DISTRICT JUDGE

The parties stipulate and agree that the aforementioned assets constitute substitute property as defined in 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461©, and are subject to forfeiture pursuant to the money judgment representing the proceeds of a violation of 18 U.S.C. § 1343 and imposed pursuant to 18 U.S.C. § 981(a)(1)©. The defendant hereby waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

NEIL H. MACBRIDE
UNITED STATES ATTORNEY

_____
Michael R. Gill
Laura Colombell Marshall
Assistant United States Attorneys

SEEN AND NOT OBJECTED TO:

_____
John K. Honey, Jr., Esq.
William R. Baldwin, III, Esq.
Counsel for Defendant

3

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA, RICHMOND DIVISION
## COURT CASE NUMBER: 3:11CR017; NOTICE OF FORFEITURE

Notice is hereby given that on March 04, 2011, in the case of U.S. v. JUSTIN G. FRENCH, Court Case Number 3:11CR017, the United States District Court for the Eastern District of Virginia entered an Order condemning and forfeiting the following property to the United States of America:

Judgment in the Amount of $7,000,000.00 (11-FBI-001245)

Numerous pieces of artwork located in Miami, Florida (11-FBI-001862), including the following items: 1 Drying Flowers I, 1989 - india ink and graphite, 14X11", signed; 1 Figure holding head, 1979 - charcoal on paper, 25 3/4 x 19 3/4", signed; 1 Two seated women, n.d. - charcoal on paper, 25 1/2 X 19 5/8", signed; 1 Dormer Window, 1972 - oil on canvas, 40 X 50", signed; 1 Pillars of Jazz, 2004 - forged steeel, 26 X 16 X 6", signed; 1 Stacked Pillar #16(green), 2004 - cast bronze, 18 x 16 x 12", signed; 1 Golden Gates, 2003 - oil, wax medium on canvas, 60 x 48", signed; 1 Rosedale, 2002 - steel, 8.1 x 8w x 16"h; 1 July 9 am, 2004 - oil on panel, 24 x 28", signed; 1 Untitled #51 (from the I Did Not Remember I Had Forgotten Series), 2002 chromogenic print, 23 3/4 x; 1 Untitled #59 (from the I Did Not Remember I Had Forgotten Series), 2002 chromogenic print, 23 3/4 x; 1 Untitled, 1999 - industrial gypsum cement, fiberglass, galvanized steel wire, dimensions variable; 1 Scumak (white), 2002 - linear low-density polyethylene, dimensions variable; 1 Tempest, 2004 - enamel and canvas on board, 60 x 60", signed; 1 Floating Space #2, 2005 - cut plastic Fresnel lens sheets, staples, dimensions variable; 1 Angel Rocker, 2005 - color sugar lift aquatint with drypoint, 52 x 41, edition 15/40, signed; 1 Danseuse (Dix Danseuses), 1926 - lithograph, 24 x 32", edition of 130, signed and numbered; 1 San Felipe Figure Study No.2, 2002 - waterbased pigments, charcoal on paper, 23 1/2 x 18", signed; 1 Another Pond Shape, 2005 - oil on masonite, 18 x 16", signed; 1 natural History, Part I Mushrooms, No.II, 1974, mixed media,30 x 22", edition 94/98, signed; 1 Untitled (Sept 14, 2006)(one), 2006 - monotype with hand additions, 64 X 50", signed; 1 Hudson Riverside, 1962 - pastel and watercolor on paper, 14 x 20", signed; 1 3 piece, Three Steps Closer Than Infinity, 2007 - lithograph on mirrorized mylar in custom made poli; 1 Person With Guitar (Pink), 2004 - 3-layer, 5-color screenprint construction, laminated to Sintra and; 1 Some Day My Prince Will Come, 1971 - photo lithograph, edition 14 of 18, 22.5 x 33.5", signed, title; 1 Come on in, 1973 - photo lithograph, edition 35 of 40. 26.5 x 33.5", signed, titled, and numbered; 1 Logans Port Indiana, 1972 - photolithgraph, edition 13 of 17, 23.5 x 32.5", signed, titled, and numb; 1 Pull The String, 2009 - acrylic on panel, 30 x 16", signed; 1 Cloud, 2005 - stainless steel, 8 x 8 1/2"; 1 Who's Got It All Figured Out, 2004 - acrylic and silk, 26 x 26 1/2"; 1 Untitled (Series of 3 Views of Downtown Richmond), 2004 - giclee print, 17 1/2 x 20"; 1 Gravelly Point, Arlington, Virginia, 2007 - from the Combined Alterations series, monotype, 20 3/4 x; 1 Floodwall 1 - From the Sustain series, Slenium-toned silver print; 1 Floodwall 2 - From the Sustain series, Slenium-toned silver print; 1 Dairy (nfd); 1 Tip of the Sun, 4 x 6; 1 Aftermath w/ Fever; 1 Glass Sculpture - Commissioned Piece; 1 Untitled, 2006 - Pink Glass Bowl; 1 Untitled, 2007 - glass - Pink Bubble which was seized from Justin Glynn French on February 18, 2011 at 16001 Collins Avenue, located in Sunny Isles Beach, FL

500 Shares of Hampton Roads Bankshares, Inc., as evidenced by a stock certificate in the name of "Justin G French". (11-FBI-001942) which was seized from Marchant, Thorsen, Honey, Baldwin & Meyer, L.L.P. on February 25, 2011 at 5600 Grove Avenue, located in Richmond, VA

Two pieces of Art - "Mint' by Donald Baechler and "Woon" by Janet Decover" (11-FBI-001945), including the following items: 1 Mint, 2007 - silkscreen, 57 3/4 x 40 1/2", edition of 69, signed; 1 Woon, 2007 - monotype, 39 x 24", signed by the artist on

**EXHIBIT B**

24, 2011 at 201 West 7th Street, located in Richmond, VA

72.7417 shares of stock in Synergy Systems, Inc. as evidenced by a stock certificate in the name of "Justin G. French" Acct# 141 (11-FBI-001959) which was seized from Justin Glynn French on January 24, 2011 at 600 East Main Street, Suite 1800, located in Richmond, VA

The Sum of $25,000.00 as evidenced by check # 22333 payable to "Justin French" issued by Seminole Hardrock Hotel & Casino Hollywood, or proceeds thereof currently held by the Law firm of Marchant, Thorsen, Honey, Baldwin & Meyer LLP Acct# 1010297610771 (11-FBI-002066) which was seized from Baldwin, W R on March 04, 2011 at Marchant, Thorsen, Honey, Baldwin & Meyer LLP, 5600 Grove Avenue, located in Richmond, VA

The United States hereby gives notice of its intent to dispose of the forfeited property in such manner as the United States Attorney General may direct. Any person, other than the defendant(s) in this case, claiming interest in the forfeited property must file a Petition within 60 days of the first date of publication (March 08, 2011) of this Notice on this official government internet web site, pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853(n)(1). The petition must be filed with the Clerk of the Court, 701 East Broad Street, Suite 3000, Richmond, VA 23219, and a copy served upon Assistant United States Attorney Laura Colombell Marshall, 600 East Main Street, Suite 1800, Richmond, VA 23219. The petition shall be signed by the petitioner under penalty of perjury and shall set forth the nature and extent of the petitioner's right, title or interest in the forfeited property, the time and circumstances of the petitioner's acquisition of the right, title and interest in the forfeited property and any additional facts supporting the petitioner's claim and the relief sought, pursuant to 21 U.S.C. § 853(n).

Following the Court's disposition of all petitions filed, or if no such petitions are filed, following the expiration of the period specified above for the filing of such petitions, the United States shall have clear title to the property and may warrant good title to any subsequent purchaser or transferee.

**USAO OFFICIAL NOTIFICATION POSTED ON APRIL 01, 2011**
**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA, RICHMOND DIVISION**
**COURT CASE NUMBER: 3:11CR17; NOTICE OF FORFEITURE**
Notice is hereby given that on March 14, 2011, in the case of U.S. v. JUSTIN G.
FRENCH, Court Case Number 3:11CR17, the United States District Court for the Eastern
District of Virginia entered an Order condemning and forfeiting the following property to the
United States of America:
Net sum of cash from the sale of one hundred percent of the membership interest of
Justin G. French, sole member of Chamberlayne Development, LLC, a Virginia limited
liability company (Virginia LLC ID S253979-1) (11-FBI-002175) which was seized from
Chamberlayne Development, LLC on March 21, 2011 at 1314 East Cary Street, located
in Richmond, VA
Net sum of cash from the sale of one hundred percent of the membership interest of
justin G. French, sole member of 316 Mitchell Street, LLC, a Virginia limited liability
company (Virginia LLC ID S273125-7) (11-FBI-002176) which was seized from 316
Mitchell Street, LLC on March 21, 2011 at 1314 East Cary Street, located in Richmond,
VA
The United States hereby gives notice of its intent to dispose of the forfeited property in
such manner as the United States Attorney General may direct. Any person, other than the
defendant(s) in this case, claiming interest in the forfeited property must file a Petition within 60
days of the first date of publication (March 23, 2011) of this Notice on this official government
internet web site, pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure and 21
U.S.C. § 853(n)(1). The petition must be filed with the Clerk of the Court, 701 East Broad
Street, Suite 3000, Richmond, VA 23219, and a copy served upon Assistant United States
Attorney Laura Colombell Marshall, 600 East Main Street, Suite 1800, Richmond, VA 23219.
The petition shall be signed by the petitioner under penalty of perjury and shall set forth the
nature and extent of the petitioner's right, title or interest in the forfeited property, the time and
circumstances of the petitioner's acquisition of the right, title and interest in the forfeited
property and any additional facts supporting the petitioner's claim and the relief sought,
pursuant to 21 U.S.C. § 853(n).
Following the Court's disposition of all petitions filed, or if no such petitions are filed,
following the expiration of the period specified above for the filing of such petitions, the United
States shall have clear title to the property and may warrant good title to any subsequent
purchaser or transferee.

USAO OFFICIAL NOTIFICATION POSTED ON APRIL 01, 2011
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA, RICHMOND DIVISION
COURT CASE NUMBER: 3:11CR17; NOTICE OF FORFEITURE
Notice is hereby given that on March 14, 2011, in the case of U.S. v. Justin Glynn
French, Court Case Number 3:11CR17, the United States District Court for the Eastern District
of Virginia entered an Order condemning and forfeiting the following property to the United
States of America:
Additional Pieces of Artwork located in Miami, Florida (11-FBI-002442), including the
following items: 1 Aftermath with Fever, 2003 - etching and relief, 28 X 22; 1 Kisses
Sweater Than Wine, 1971 - Photo lithograph; 1 Unknown (Blue and green piece looks
similar to Western Winter); 1 Photograph in a black frame, black & white of forest &
columns (taken in Mexico); 1 Photograph in white frame, photo of clouded forest; 1
Photograph in black frame, photo of dark scene; 1 Photograph in white frame, photo of
palm tree; 1 Fountainbleau Louisiana, photograph in white frame, photo of bricks; 1
Photograph in black frame, photo of Johnny Cash; 1 Photograph in black frame, photo
of Radio Head; 1 Black & blue painting on white canvas; 1 Painting in a wood frame
(seen in USMS photo #73); 1 Painting in a black frame (seen in USMS photo #74); 1
Painting in a wood frame (seen in USMS photo #75); 1 Red Rider, 2 panels, 2003 -
watermedia on rag paper, under shaved beeswax, mount/primed wood, 25X26 which
was seized from Justin Glynn French on March 22, 2011 at 16001 Collins Avenue,
located in Sunny Isles Beach, FL
The United States hereby gives notice of its intent to dispose of the forfeited property in
such manner as the United States Attorney General may direct. Any person, other than the
defendant(s) in this case, claiming interest in the forfeited property must file a Petition within 60
days of the first date of publication (March 24, 2011) of this Notice on this official government
internet web site, pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure and 21
U.S.C. § 853(n)(1). The petition must be filed with the Clerk of the Court, 701 East Broad
Street, Suite 3000, Richmond, VA 23219, and a copy served upon Assistant United States
Attorney Laura Colombell Marshall, 600 East Main Street, Suite 1800, Richmond, VA 23219.
The petition shall be signed by the petitioner under penalty of perjury and shall set forth the
nature and extent of the petitioner's right, title or interest in the forfeited property, the time and
circumstances of the petitioner's acquisition of the right, title and interest in the forfeited
property and any additional facts supporting the petitioner's claim and the relief sought,
pursuant to 21 U.S.C. § 853(n).
Following the Court's disposition of all petitions filed, or if no such petitions are filed,
following the expiration of the period specified above for the filing of such petitions, the United
States shall have clear title to the property and may warrant good title to any subsequent
purchaser or transferee.

USAO OFFICIAL NOTIFICATION POSTED ON APRIL 01, 2011
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA, RICHMOND DIVISION
COURT CASE NUMBER: 3:11CR17; NOTICE OF FORFEITURE
Notice is hereby given that on March 04, 2011, in the case of U.S. v. Justin Glynn
French, Court Case Number 3:11CR17, the United States District Court for the Eastern District
of Virginia entered an Order condemning and forfeiting the following property to the United
States of America:
3 Pieces of Art locate at 1314 East Cary Street (11-FBI-002160), including the following
items: 1 River Fragment, Deep Cold, 2004 - mixed media, 50 x 12", signed, Ser No:
None; 1 River Fragment, Ice and Snow, 2004 - mixed media, 50 x 12", signed, Ser No:
None; 1 Casual Affair, 2005 - mylar, graphite, acrylic, 240 x 42", Ser No: None
The entire contents of Union First Market Account No. 4011745082 in the name of
"1717 Summit Avenue Holdings LLC" Acct# 4011745082 (11-FBI-002382) which was
seized from Union First Market Bankshares Corporation on March 15, 2011 at P. O. Box
940, 24010 Partnership Boulevard, located in Ruther Glen, VA
The entire contents of Union First Market Account No. 4011609627 in the name of
"614-620 North 28th Street Holdings LLC" Acct# 4011609627 (11-FBI-002386) which
was seized from Union First Market Bankshares Corporation on March 15, 2011 at P. O.
Box 940, 24010 Partnership Boulevard, located in Ruther Glen, VA
The entire contents of Union First Market Account No. 4011611961 in the name of 3017
M Street Holdings LLC Acct# 4011611961 (11-FBI-002390) which was seized from
Union First Market Bankshares Corporation on March 15, 2011 at P. O. Box 940, 24010
Partnership Boulevard, located in Ruther Glen, VA
The entire contents of union First Market Account No. 4011611979 in the name of
"2306-2310 Parkwood Avenue Holdings LLC" Acct# 4011611979 (11-FBI-002391)
which was seized from Union First Market Bankshares Corporation on March 15, 2011
at P. O. Box 940, 24010 Partnership Boulevard, located in Ruther Glen, VA
The entire contents of Union First Market Account No. 4011611987 in the name of
"2201-2203 West Cary Street Holdings LLC" Acct# 4011611987 (11-FBI-002392) which
was seized from Union First Market Bankshares Corporation on March 15, 2011 at P. O.
Box 940, 24010 Partnership Boulevard, located in Ruther Glen, VA
The entire contents of Union First Market Account No. 4011745017 in the name of
"2324 Parkwood Avenue Holdings LLC" Acct# 4011745017 (11-FBI-002402) which was
seized from Union First Market Bankshares Corporation on March 15, 2011 at P. O. Box
940, 24010 Partnership Boulevard, located in Ruther Glen, VA
The entire contents of Union First Market Account No. 4011745074 in the name of
USAO OFFICIAL NOTIFICATION POSTED ON APRIL 01, 2011
"1707 Summit Avenue Holding LLC" Acct# 4011745074 (11-FBI-002403) which was
seized from Union First Market Bankshares Corporation on March 15, 2011 at P. O. Box
940, 24010 Partnership Boulevard, located in Ruther Glen, VA
The entire contents of Union First Market Account No. 4011086255 in the name of "6-10
Robinson Street Holdings LLC" Acct# 4011086255 (11-FBI-002408) which was seized
from Union First Market Bankshares Corporation on March 15, 2011 at P. O. Box 940,
24010 Partnership Boulevard, located in Ruther Glen, VA
The entire contents of Union First Market Account No. 4011502855 in the name of
"2601 Floyd Avenue Holdings LLC" Acct# 4011502855 (11-FBI-002409) which was
seized from Union First Market Bankshares Corporation on March 15, 2011 at P. O. Box
940, 24010 Partnership Boulevard, located in Ruther Glen, VA
The United States hereby gives notice of its intent to dispose of the forfeited property in
such manner as the United States Attorney General may direct. Any person, other than the

defendant(s) in this case, claiming interest in the forfeited property must file a Petition within 60 days of the first date of publication (March 24, 2011) of this Notice on this official government internet web site, pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853(n)(1). The petition must be filed with the Clerk of the Court, 701 East Broad Street, Suite 3000, Richmond, VA 23219, and a copy served upon Assistant United States Attorney Laura Colombell Marshall, 600 East Main Street, Suite 1800, Richmond, VA 23219. The petition shall be signed by the petitioner under penalty of perjury and shall set forth the nature and extent of the petitioner's right, title or interest in the forfeited property, the time and circumstances of the petitioner's acquisition of the right, title and interest in the forfeited property and any additional facts supporting the petitioner's claim and the relief sought, pursuant to 21 U.S.C. § 853(n).

Following the Court's disposition of all petitions filed, or if no such petitions are filed, following the expiration of the period specified above for the filing of such petitions, the United States shall have clear title to the property and may warrant good title to any subsequent purchaser or transferee.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA

IN RE:                        .      Case No. 11-31954 (DOT)
                              .
                              .
                              .
JUSTIN GLYNN FRENCH,          .      701 East Broad Street
                              .      Richmond, VA 23219
                              .
                              .
        Debtor.               .      April 14, 2011
. . . . . . . . . . . . ..            10:16 a.m.


     TRANSCRIPT OF HEARING ON MOTION TO APPOINT TRUSTEE
           BEFORE HONORABLE DOUGLAS O. TICE
        UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:            Marchant, Thorsen, Honey, Baldwin, and
                             Meyer, L.L.P.
                           By:  WILLIAM R. BALDWIN, ESQ.
                           5600 Grove Avenue
                           Richmond, VA 23226-2102

For the Creditor           Sands Anderson
Paragon Commercial         By:  C. THOMAS EBEL, ESQ.
Bank:                      1111 E. Main Street, Suite 2300
                           Richmond, VA 23219-3500




Proceedings recorded by electronic sound recording, transcript
               produced by transcription service
_____

             J&J COURT TRANSCRIBERS, INC.
                 268 Evergreen Avenue
                Hamilton, New Jersey 08619
                E-mail:  jjcourt@jjcourt.com

          (609) 586-2311   Fax No. (609) 587-3599

2

**I N D E X**

| | | PAGE |
|---|---|---|
| **EXHIBITS** | | **EVD.** |
| A | Paragon, as Plaintiff, Judgments | 8 |
| B | Citizens Bank and Trust Petitioner's Exhibit | 9 |
| C to E | Four Franklin Federal Savings Bank Judgments | 9 |
| H | Rostormel Financial Services, LLC, Judgment | 11 |
| I | Ann K. Hillsman Judgment | 11 |
| J | Martin Gargan and Mars Judgment | 11 |
| K | E.A. Holsten, Inc. Judgment | 11 |
| L | Forfeiture notices | 12 |
| M to P | Orders forfeiting assets | 12 |

1          COURTROOM DEPUTY:  All rise.  United States

2  Bankruptcy Court for the Eastern District of Virginia is now in

3  session.  Chief Judge Douglas O. Tice, Jr., presiding.  Please

4  be seated and come to order.

5          COURT CLERK:  This is the matter of Justin Glynn

6  French, hearing on motion to appoint trustee.

7          THE COURT:  Good morning.

8          MR. EBEL:  Good morning, Your Honor, Tom Ebel,

9  counsel for Paragon Commercial Bank.  We are here today on

10 Paragon's emergency motion to appoint an interim Chapter 7

11 Trustee pursuant to Section 303(g) of the bankruptcy code,

12 which is pursuant to the involuntary bankruptcy petition that

13 three petitioning creditors have filed; Paragon Commercial

14 Bank, Franklin Federal Savings Bank, and Citizens Bank and

15 Trust.  I --

16         THE COURT:  Where does the involuntary petition

17 stand, procedurally, at this point?

18         MR. EBEL:  It's been filed and it's been served on

19 the debtor and I believe a response is due April the 22nd,

20 somewhere in that category.  We are proceeding under Section

21 303(g) of the involuntary section, and I believe just to clear

22 this up, I believe the Court has granted our motion for an

23 expedited hearing, and so we're ready --

24         THE COURT:  I think we can assume that part.

25         MR. EBEL:  So, we're ready to proceed.

4

1                THE COURT:  You may.

2                MR. EBEL:  Glad -- glad to answer any questions the

3      Court has, but we're ready to proceed.

4                THE COURT:  Well, I don't believe we need an opening

5      statement.  You can just go ahead and argue your motion, and

6      Mr. Baldwin can respond.

7                MR. EBEL:  Thank you, Your Honor.

8                THE COURT:  And I have read the papers, so --

9                MR. EBEL:  You -- excuse me?

10               THE COURT:  I have read the papers that the parties

11     filed.

12               MR. EBEL:  You have read the papers.  Okay.  And you

13     received and read what we filed yesterday?

14               THE COURT:  Yes, sir.

15               MR. EBEL:  Okay.  Well, just briefly to open, as I

16     believe the Court is aware, the proposed debtor, Justin French

17     once was a prominent local real estate developer, who last

18     summer, began defaulting on real estate loans in completed --

19     on completed and uncompleted projects all over the city, and I

20     appreciate Mr. Baldwin as counsel for Mr. French, citing in his

21     opposition the numerous press accounts of his situation.  I

22     think that those fully support our motion with respect to his

23     activities.  He has defaulted on a large number of loans and

24     other debts, lenders of instituted receivership proceedings and

25     foreclosure proceedings and numerous creditors have taken

1  judgment against him, and I'm going to cover that in a second.

2  And that's just -- that's just what we know from the public

3  records and from the press.

4        The default on his debts were simultaneously or

5  shortly filed after some of those defaults.  He was arrested on

6  fraud charges relating to his activities with historic tax

7  credits, to which he has pled guilty, and pursuant to his plea

8  agreements, as we, I believe, we've shown the Court in our

9  filing yesterday, substantial amounts of his assets are being

10 transferred to the United States Government and he's to be

11 sentenced on May the 3rd.

12       Very precisely, Your Honor, Mr. French -- very

13 simply, Mr. French is precisely the type of debtor, the type of

14 person, the type of situation for which the involuntary

15 bankruptcy section under Section 303 of the bankruptcy code was

16 created.  I cannot think of a situation that falls more

17 squarely within Section 303 and I cannot think of a situation

18 which falls more squarely within Section 303(g) of the code.

19       A fundamental proposition is that someone who has

20 taken the actions that Mr. French has taken, should not be in

21 control of his own financial affairs, and those financial

22 affairs should be investigated and someone else, other than Mr.

23 French, should be in control of the disposition of his

24 property.

25       The sole objection filed by Mr. Baldwin, to our

1  motion is that no emergency exists.  We strongly disagree.  I

2  think our reply yesterday shows to Your Honor that there

3  clearly is an emergency situation.  A clock is running, and

4  even independent of that, you've got someone who's refused to

5  pay his debts, who's transferring his assets, who's pled guilty

6  to crimes, and his situation should be investigated by a

7  trustee.

8          But, with respect to the emergency nature, Your

9  Honor, I would believe they're in our -- attached to our reply

10 of yesterday and we're going to introduce them, but I just want

11 to read to the Court from that -- one of those notices.  There

12 are four notices of foreclosure.  They've been published on the

13 federal foreclosure website, forfeiture notice website, and

14 each one of them reads as follows.  They have different dates,

15 but United States, hereby, gives notice of its intent to

16 dispose of the forfeited property in such manner as the United

17 States Attorney General may direct.  Any person, other than the

18 defendants in this case, claiming interest in the forfeited

19 property, must file a petition within 60 days of the first date

20 of publication, this particular one I'm reading from was March

21 23rd, 2011.  There were four of them, two on March 24th, one on

22 March 23rd and one on March the 8th.

23         So, first date of publication of this notice on this

24 official government Internet website, pursuant to Rule 3.2 of

25 the Federal Rules of criminal procedure and 21 U.S.C. Section

1   853(n)(1).  The petition must be filed with the clerk of the

2   court, 701 East Broad Street, Suite 3000, Richmond, Virginia,

3   23219, and a copy served on the Assistant United States

4   Attorney Laura Colombell Marshall, 600 East Main Street, Suite

5   1800, Richmond Virginia, 23219.

6          And it goes on to talk about -- let's see, the

7   petition shall be signed by the petitioner under penalty of

8   perjury and shall set forth the nature and extent of the

9   petitioner's right, title and interest, in the forfeited

10  property.  The time and circumstances of the petitioner's

11  acquisition of the right and interest in the forfeited property

12  and any additional facts supporting the petitioner's claim in

13  relief sought pursuant to Section -- to 21 U.S.C. Section

14  853(n).

15         So, those notices create, we think, in addition to

16  the other facts, a very significant emergency in which a claim

17  needs to be made and filed pursuant to Section 21 U.S.C.

18  853(n), in addition to any other actions the trustee may take.

19  But, that needs to happen in order to protect any interest in

20  these forfeited assets.  It appears that they're all, or

21  substantially all of a Mr. French's assets, but we don't know

22  that.  We don't know what his assets are.  That needs to be

23  investigated.

24         Obviously, Mr. French would like to see this delayed

25  because, therefore, these assets would be used for the benefit

1    of his -- for himself in the criminal proceedings.  I think

2    Your Honor should recognize, at best, the situation is a

3    remorseful debtor who's turning over assets to the Federal

4    Government for his own benefit, in this criminal proceeding and

5    perhaps a selected group of victims there.  At worst, this is a

6    clandestine scheme to ensure that a large majority of his

7    unsecured creditors receive nothing.

8            I want to establish for the Court that it's likely

9    that we will prevail in an involuntary petition.  The three

10   petitioning creditors, as I said, are Paragon Commercial Bank,

11   Franklin Federal Savings Bank, and Citizens Bank and Trust.

12   And I'd like to present to the Court and ask the Court to take

13   judicial notice of final orders entered in the Circuit Court of

14   the City of Richmond, granting judgment to those creditors.

15           I have copies of the judgments taken by each creditor

16   that I'd like to present to the Court.  I have original

17   certified copies if the Court would prefer those, or I have

18   copies.  These are the copies and for -- Paragon has three

19   judgments totaling $1,000,979 -- 748 -- I apologize --

20   $1,979,748.96, plus interest, plus attorneys' fees, plus costs.

21   So, I submit as Exhibit A the three Paragon judgments.

22           UNIDENTIFIED SPEAKER:  I wonder if counsel has a copy

23           THE COURT:  Let Mr. Baldwin have all the documents

24   you intend to submit.

25           UNIDENTIFIED SPEAKER:  You have his copies?

1          UNIDENTIFIED SPEAKER:  Sure.

2          THE COURT:  These three on Paragon as plaintiff, are

3 admitted.

4          MR. EBEL:  Thank you, Your Honor.

5          Second, we have a final judgment -- all of these are

6 final judgments entered by the Circuit Court of the City of

7 Richmond.  Secondly, we have a judgment in favor of Citizens

8 Bank and Trust, in the amount of $435,995.36, and I ask that be

9 admitted as Petitioner's Exhibit B.

10          THE COURT:  Admit.

11          MR. EBEL:  Second, Your Honor -- or, third, Your

12 Honor, I have four judgment orders from the Circuit Court of

13 the City of Richmond entered in favor of Franklin Federal

14 Savings Bank, formerly known as Franklin Federal Savings and

15 Loan, in the amount of $525,228.98.  Again, all of these, in

16 addition to these amounts are plus interest, plus attorneys'

17 fees and plus cost.

18          THE COURT:  These three documents are admitted.

19          MR. EBEL:  Your Honor, those three -- just those

20 three together total almost $3 million, which are far in excess

21 of the statutory amount of 14,000, plus it's in the code.  I

22 also, would like to admit, and we have certified copies of

23 these, a number of additional judgments that have been entered

24 in the Circuit Court of the City of Richmond, and I'll go

25 through each one of those.  And I just -- these are not

1  petitioning creditors, but I believe that they are evidence of

2  additional judgments, additional unsecured creditors, and that

3  Mr. French's debts are not being paid as they come due.

4          The first of those is in favor of American Express

5  Bank.  It's a judgment order in the amount of $254,613.90, and

6  that's a judgment against Justin French and French Consulting

7  Company.  I'd like to --

8          THE COURT:  Just hand them -- go through all of them

9  and then hand them up at one time.

10         MR. EBEL:  Okay.  The next judgment is in favor of

11 Rostormel Financial Services, LLC and is in the amount of -- I

12 apologize, I can't find it.  Well, this actual judgment talks

13 about court costs of $444 and reasonable attorneys' fees of

14 $15,000.  I don't see a judgment amount in that particular

15 order, but it is a judgment entered against Justin G. French,

16 Churchill Properties, LC, and 614 to 620 North 28th Street,

17 LLC.

18         There's a judgment in favor of Ann K. Hillsman in the

19 amount of $63,111.30, plus interest and attorneys' fees.  There

20 is a judgment in favor of Martin Gargan and Mars in the amount

21 of $11,972.39, plus interest and attorneys' fees.  There is a

22 judgment -- let's see -- a judgment in favor of E.A. Holsten,

23 Inc., in the amount of $7,261.70 and those are the additional

24 judgments that we would ask that be entered into evidence and

25 that we'd ask all of those as the next numbered exhibit.

1          THE COURT:  They'll be admitted.

2          MR. EBEL:  Your Honor, my apologies, the one on

3    Rostermel that I was looking at, the copy I was looking at, it

4    had page -- the second page omitted, and so the judgments --

5    this is a copy that has those judgments.  One is for $950,000

6    and the other is for $483,731 and --

7          THE COURT:  All right.  Hand it up.

8          MR. EBEL:  Your Honor, continuing, as admitted by

9    counsel for Mr. French in his response, Mr. French has pled

10   guilty to federal felony charges of fraud, which relate to his

11   historic tax credit situation.  In this regard, I would ask the

12   Court to take judicial notice of the following, which had been

13   docketed in the Federal District Court.

14         MR. BALDWIN:  Your Honor, we have no objection.  The

15   district court records speak for themselves, so -- and Your

16   Honor can look at them on PACER so they can all come in,

17   anything from the district court that counsel wants to propose.

18         THE COURT:  All right.  Well, just let Mr. Baldwin

19   know what you're handing up and --

20         MR. EBEL:  It's going to be the plea agreement, the

21   first order of forfeiture, the corrected first order of

22   forfeiture, the second order of forfeiture, and the corrected

23   second order of forfeiture.

24         THE COURT:  They'll be admitted.

25         MR. EBEL:  And, Your Honor, these orders are entered

1 and show to the Court that Mr. French appears to be forfeiting

2 substantial amounts of assets to the United States Government.

3 As I have stated and is in our reply to counsel for

4 Mr. French's opposition to our motion, these forfeitures have

5 now been published starting in March on the forfeiture website,

6 and we would like to enter those into evidence.

7 　　　　　MR. BALDWIN:  We have no objection to excerpts from

8 the government's website, Your Honor.

9 　　　　　MR. EBEL:  And these are four separate notices

10 listing a number of assets, artwork, cash, interest in limited

11 liability companies.  They speak for themselves, and we would

12 enter those in the next exhibit.

13 　　　　　THE COURT:  All right.  They're admitted.

14 　　　　　MR. EBEL:  Those forfeiture notices that I've stated,

15 show that in order to claim an interest in these -- in the

16 assets that are being forfeited, petitions must be filed with

17 the United States District Court some time between May 7th and

18 May 23rd, for those -- that's the range of dates in which they

19 must be filed.

20 　　　　　The established procedure for filing such a petition

21 is set forth under Section 21 U.S.C. 853(n), and if a petition

22 is not filed all claims to any of those assets are waived and

23 they'd vest full title in the government.

24 　　　　　We believe, Your Honor, and the reason we're here

25 today, is that the very best party to pursue these claims and

1  to investigate Mr. French's situation is a bankruptcy trustee.

2  We think Mr. French should be in bankruptcy and we think a

3  trustee should be appointed to both pursue these assets and I

4  believe in his opposition they stated that there are other

5  assets.  So, before everything is gone, before everything is in

6  a legal position where no claim can be made to it, we believe

7  for the protection of all of the creditors of Mr. French an

8  interim bankruptcy trustee should be appointed.

9       It's very difficult for any of us to know what's

10  going on here.  You have to look to the public record, try to

11  deduce what's going on and a trustee with all of the authority

12  under the bankruptcy code should be appointed to determine what

13  is happening and what the appropriate action is.

14       Mr. Baldwin may say that's not necessary, it's all

15  going to go to the Federal Government anyway, and that, you

16  know, the Federal Government will take care of the people that

17  are supposed to be taken care of.  We don't agree and if that's

18  the case, so be it.  But, the creditors who are owed as much as

19  we are owed and all the other creditors of Mr. French have a

20  right to know whether that's the case.

21       We believe, frankly, that there are legitimate claims

22  to these assets being transferred.  The case law that we've

23  reviewed indicates that the only assets that are appropriate to

24  be forfeited are assets that were acquired with the proceeds of

25  the criminal activity.  And if you look at the breadth of those

1  assets, we just think it's -- from what we can conclude, it's

2  very unlikely that all of those assets were acquired with the

3  proceeds of the sale of historic tax credits.

4       Mr. French, we do know, had vast other resources, he

5  had a number of projects in which -- that were not subject --

6  or did not involve historic tax credits.  Those projects

7  generated income.  They generated loan -- he got loan proceeds

8  for them.  How do we know?

9       But, a bankruptcy trustee is, exactly, the one who

10  should find that out.  And there is support, there's a Fourth

11  Circuit case, Reckmeyer under 836 F.2d 200 that expressly

12  provides that general unsecured creditors have the right to

13  pursue a claim under 853(n) and, obviously, a bankruptcy

14  trustee would be the best one to do that.

15       We, also, think that it would be very beneficial for

16  a trustee be appointed to do the very best he or she could to

17  investigate Mr. French's assets before he's sentenced and

18  perhaps goes to jail on May the 3rd.

19       Finally, Your Honor, we don't know whether this is

20  just part -- as I mentioned before, just part of a scheme to

21  prefer one class of creditors that Mr. French desires to

22  prefer, which may be the victims of -- the alleged victims of

23  the historic tax credit scheme that he promoted.

24       Your Honor, Section 303(g) provides, at any time

25  after the commencement of an involuntary case under Chapter 7

1  of this title, but before an order of relief in the case, the

2  Court on request of a party in interest, after notice to the

3  debtor and a hearing, and if necessary to preserve the property

4  of the estate or to prevent loss to the estate, may order the

5  United States Trustee to appoint an interim trustee under

6  Section 701 of this title to take possession of the property of

7  the estate or to operate any business of the debtor.

8       Therefore, Your Honor, we think this is exactly, when

9  Congress drafted this and when this was passed, this is exactly

10  what they had in mind.  That there was a situation where there

11  was -- that was serious enough in which assets were being

12  transferred and in which an investigation needed to be made and

13  the rights of a trustee needed to be asserted, and we can't

14  think of one any more squarely that falls under that section

15  than this one.

16       Mr. French ceased -- voluntarily, ceased paying his

17  debts last summer.  He has numerous judgments against him.

18  He's pled guilty to fraud claims.  He appears to be going to

19  jail.  He is transferring significant assets, perhaps all of

20  his assets for his own benefit and there are deadlines

21  approaching in order to make filings to protect those assets.

22       We have three valid petitioning creditors with valid

23  -- not just somebody who claims that they're owed money, but

24  had valid judgments entered in the Circuit Court of the City of

25  Richmond, totaling $3 million, and a very, very significant

1  likelihood that an order of relief will be entered.  Therefore,

2  on behalf of Paragon Bank, we ask that you appoint an interim

3  trustee in this case to protect the estate pursuant to Section

4  303(g).

5       THE COURT:  All right.  Thank you.  Let me hear from

6  Mr. Baldwin.

7       MR. BALDWIN:  Thank you, Your Honor, Bill Baldwin,

8  Marchant, Thorsen, Honey, Baldwin, and Meyer for Justin Glynn

9  French, the alleged debtor.

10      Frequently, when one hears a pitch to the Court one

11 wonders if it's the same case that I am aware of.  We start

12 with a proposition of a pitch for an emergency where there were

13 no details in the emergency.  We then look at the papers, which

14 says French is making transfers, with no details whatsoever.

15      When I objected to that and pointed out that the

16 transfers that I was aware of were those on the public record

17 of the United States District Court, which weren't exactly the

18 kinds of transfers that bankruptcy normally deals with, they

19 responded by -- after I provided the criminal docket,

20 obviously, that's on the computer for anybody who has access

21 -- they then decided to actually provide the details.

22      And it's always interesting to note the difference

23 between the spin of a pitch of an advocate and what the

24 advocate actually signs in places with the Court.  Because the

25 word "investigate" nowhere appears, to my knowledge, in the

1  papers they have done to the Court and I can understand why

2  they don't say that it's essential that a trustee be appointed

3  to do an investigation because there is an entity known as the

4  United States Government acting through the United States

5  Attorney's Office for the Eastern District of Virginia, before

6  the United States District Court for the Eastern District of

7  Virginia, that has some investigatory powers.  There's

8  something called a Grand Jury, and while it's not in evidence

9  in this hearing, I am aware, as counsel for Mr. French in the

10 Title 18 case, that there have been a number of subpoenas that

11 have been issued, 60 or 70 of them, which has led to a entire

12 box full of documents of 80 or 90 banker's boxes, or more, in

13 the custody of the Federal Bureau of Investigation in the

14 Parham Road office, here in town.  I've been out to see it.

15 They're in the custody of the Federal Bureau of Investigation.

16      So, to say that there needs to be a trustee appointed

17 and the reason one needs to be appointed now, before there's an

18 order for relief, is a staggering statement because, basically,

19 counsel seems to be questioning the competence of the

20 prosecutorial authorities of the United States of America,

21 without any factual basis for doing so.

22      Counsel didn't say that he talked with the FBI and

23 had tried to get access to the records and precluded under any

24 circumstances.  I think the FBI might have other uses for those

25 documents; that is, the prosecution of Mr. French, than to just

1  simply make them available for carte blanche.

2         But, I don't believe that the FBI would preclude

3  counsel, absolutely, reputable counsel, from looking at records

4  that were obtained by the United States Government and they

5  don't make the claim that they've tried to and have been

6  refused.  There is no statement, whatsoever, that they've gone

7  to the Office of the United States Attorney and have attempted

8  to have any dialogue with the United States Attorney to find

9  questions about all of these things that they need to have

10 investigated and that's why they need to have a trustee

11 appointed right now to do these investigations.

12        What they have, in essence, as alleged, the

13 professional incompetence of the United States Attorney for the

14 Eastern District of Virginia because, inferentially, a part of

15 the argument is, they must have looked over something because

16 -- and that's why we need to have a trustee.  And the thought

17 that a bankruptcy trustee is going to be able to accomplish for

18 purposes of investigation things that the United States

19 District Court and the prosecutors cannot accomplish through

20 the Grand Jury process through subpoenas and the entire

21 criminal process, is just to me a mind boggling exercise.  It

22 can't possibly be true and certainly this Court should put

23 counsel to a very stringent level of proof.  Something other

24 than mere oral advocacy before giving that any credit.  That's

25 point one.

1          Point two, we have judgment creditors.  Now, as a
2    technical matter, they haven't provided any evidence as to what
3    real estate those judgments, when recorded, automatically are
4    docketed and they become leans against real estate.  So, we
5    don't have any evidence about the real estate that they're --
6    that they attach to, but I'm not going to tell the Court that I
7    think there's enough real estate out there to render these
8    creditors secured.  There isn't.  But, counsel did not put that
9    to the Court.
10          But, what Virginia, also, gives judgment creditors,
11   something called debtors' interrogatories.  It's not as if
12   these creditors are bereft of the ability to go and get assets
13   and assert their own interests, under Virginia procedures -- I
14   think it's maybe 507, I always look it up whenever I do one --
15   8.01-507-506, they have the right to issue subpoenas, and they
16   have the right to bring Mr. French, as a judgment debtor,
17   before a court official, a commissioner in chancery and ask him
18   questions about his assets.  Asking everything about his debts,
19   pretty much the same panoply that a bankruptcy trustee can do,
20   probably not quite as broad given the way the statute is
21   actually drafted.  But, they certainly have every power to ask
22   about Mr. French's position.
23          They haven't -- counsel has not told the Court
24   they've even tried to do that.  So, you have three judgment
25   creditors, all banks, all obviously capable of hiring, paying,

1  and directing competent counsel to go out and represent their

2  interest and none of them have done this.  So, to claim that

3  they have a need for this, that there's some kind of

4  extraordinary justification for this Court to short circuit the

5  normal processes of a bankruptcy, is utterly un-demonstrated,

6  simply, because they haven't told you they've tried to do

7  anything, either informally with the United States Government,

8  or formally through the rights that the Virginia Code gives

9  them.  What they do is substitute rhetoric for reality.

10        Now, we move to the main point of what they're about.

11 I would, respectfully submit that their beef is with the United

12 States Code.  It's funny to hear counsel say that he can't

13 think of a better circumstance for the appointment of a

14 trustee, and if this is what Congress wanted, because what, in

15 reality, they're trying to do, is go to war with the United

16 States District Court.  They don't like what the prosecution is

17 doing.  They don't like what the United States District Court

18 is doing.  They don't like what Mr. French is doing.

19        The inference is that Mr. French is a volunteer in

20 this process.  Well, I want them to put on evidence that Mr.

21 French is voluntarily going to jail, which he almost certainly

22 will, but he has voluntarily pleaded guilty, and I mean in the

23 normal sense of voluntary, as in voluntary transfer, like 55-81

24 of the Virginia Code, or Section 544 of the bankruptcy code.

25 There isn't any evidence that he's a volunteer.  The fact that

1  a person pleads guilty doesn't mean that they make themselves

2  guilty when they did not deem themselves to be factually

3  guilty.

4        The United States District Court requires, through

5  the federal rules of criminal procedure and United States

6  Supreme Court precedent, a detailed investigation and

7  interrogation of the prospective guilty person to be assured

8  there is a factual basis for that plea.  That did happen in

9  this case.  There is a plea agreement and a statement of facts

10  that sets that basis out, as required under the United States

11  Criminal Code -- excuse me -- under Title 18, and more

12  particularly, the federal rules of criminal procedure.  That

13  doesn't mean that Mr. French is, therefore, a volunteer in the

14  sense of the fraudulent conveyance laws because he admitted to

15  his guilt.  It also, doesn't mean Mr. French is a volunteer

16  because he elects to enter into consensual orders of

17  forfeiture, rather than wage war against the very government

18  that is about to sentence him.

19        Mr. French has done things that he should not have

20  done.  He has pleaded guilty in acknowledgment of that.  The

21  federal government has certain rights pursuant to Titles 18 and

22  21 of the United States Code to take action against Mr.

23  French's property as a result of that.  They have chosen to do

24  so.  Mr. French has chosen to be cooperative with the

25  Government out of a desire to -- the cynic would say make the

1 best of a bad situation.  I believe it is of a profound sense

2 of regret and remorse for what he has done.  But, whatever the

3 -- whatever the cause, what the Court must deal with is the

4 law.  And what they want this trustee to do, I listened to all

5 of the things this trustee should do, and they're all things

6 that they can do themselves or that the United States is and

7 has been doing, in particular with regard to making claims with

8 the United States District Court.

9        Now, what could a trustee do that these creditors

10 can't do?  Well, they're judgment creditors, so if they want to

11 issue liens and execute on either intangible property or

12 tangible personal property, or realty, they have that right

13 under Virginia law.  There's no allegation that Mr. French has

14 any assets outside the reach of the Virginia Courts, or that

15 they are unable to take the judgments that they have, and take

16 those judgments under applicable state law, Uniform Reciprocal

17 Enforcement of Foreign Judgments Acts, two appropriate

18 jurisdictions to exercise their judgment creditor rights.  So,

19 don't make that allegation.

20        If they wanted to get writ of fi. fa. and wanted to

21 levy on a property, they have that right to do that if they

22 think that could affect the decision of the United States

23 Government if they wanted to assert a right or a remedy in some

24 kind of property.  They've chosen not to do that.  I don't

25 fault them for doing that.  That probably would be a futile

1  exercise on their part.  But, a bankruptcy trustee simply

2  stands in the shoes of the creditors under Section 544 with

3  regard to those rights.

4         Now, an argument could be made that a bankruptcy

5  trustee -- and I'm perhaps arguing Mr. Ebel's points, but I

6  don't mind doing so because I want the Court to have a full

7  understanding of the situation -- it could argue that trustee

8  has the right of a bonafide purchaser of real estate, which is

9  not something that a judgment creditor in Virginia has, but a

10  trustee does have that statutory right under 11 U.S.C. Section

11  544.

12         There hasn't been any allegation that Mr. French, in

13  his own right, owns any real estate.  Well, he, actually, did,

14  with 330 Oak in the City.  Now, that was probably a grossly

15  unencumbered piece of real estate, since its value is perhaps

16  around $2 million and it had about 2.5 million in liens on it,

17  as shown by the public records.  That asset has already been

18  forfeited.

19         Counsel hasn't shown that Mr. French owns, in his

20  name, any other assets, which means that a bankruptcy trustee

21  -- excuse me -- any other real-estate assets.  And to my

22  knowledge he doesn't, I will make that representation to the

23  Court, and if the Court want's Mr. French to testify to that,

24  he's happy to do so.  So, a bankruptcy trustee would not have

25  the unusual DFP power of Section 544 to go in and perhaps try

1  to fight the Government with regard to the status of a BFP

2  versus that of the Government on fighting over a piece of real

3  estate.  That's just -- that's just not in the cards.  Counsel

4  didn't make that allegation, but if he had that would be our

5  response and I think it's important for the Court to do that.

6       So, we then go down the list of the trustee's other

7  powers that aren't held by creditors, generally.  What are the

8  trustees other powers?  Well, we've talked about hypothetical

9  lien creditor, we've talked about VFP preference.  He's going

10 to sue the United States for preference?  I don't think so.  Is

11 he going to sue the United States for transfers, for lack of

12 reasonably equivalent value?  Well, if there's a cause of

13 action for that, I'm expecting the United States Government can

14 probably pay for it because all of us work for the United

15 States Government in the sense of the fiscal side of things.

16 There's no allegation that if there's a proper cause of action

17 for a trustee to sue the Government for these forfeitures

18 because it's the Government that will be taking the property

19 that the trustee will be bereft with some kind of remedy if

20 that occurs.  And I don't think there's any case law that

21 supports that proposition, but creative counsel make creative

22 arguments and the claims court will there if that's a proper

23 cause.

24       Turnover of property.  Well, the problem with

25 turnover property, if it's the Government, then the Government

1 doesn't have to turn it over.  I did a little reading and I saw

2 one analysis talking -- trying to compare forfeiture laws to

3 the Whiting Pools case.  The Court may remember the IRS case

4 where they had liens on the vans, but hadn't yet executed and

5 sold the vans and the Supreme Court there said, turn them over,

6 they're the debtor's property.  They may have liens on them.

7 The Bankruptcy Court can deal with the issue of the liens.  You

8 don't yet own the property.

9        And so, after hearing counsel's presentation and

10 having taken a quick tour through the bankruptcy trustee's

11 avoidance powers, I can't find a single basis where a trustee

12 could make a claim in or to Mr. French's assets, because first

13 they'd have to fall into the category of personal property,

14 tangible or intangible, or in the word of Virginia, capable of

15 being levied on or not, or real.  That's the only property a

16 person can have.  And there's been no showing that a trustee

17 can do that differently than any of these creditors.

18        So, what the claim, I guess, is that a trustee might

19 have the rights of all creditors to make that claim.  It's sort

20 of a class action kind of approach, to go in and make the pitch

21 of all creditors, with the status of potential judgment

22 creditors, as opposed to simply, three judgment creditors with

23 millions of dollars in claims and a slew of other judgment

24 creditors with not quite the same numbers.  But, that doesn't

25 indicate that that makes any particular sense that the trustee

1    should try to go in and, in effect, be a class action when

2    these creditors themselves have the right to go do that.  Not

3    one of these judgment creditors is precluded from exercising

4    their judgment creditor rights, insofar as that goes.

5         Now, they may have precluded themselves because of

6    filing an involuntary petition, may create an automatic stay

7    under certain circumstances, but they've shot themselves in the

8    foot in that regard, and having wounded themselves shouldn't be

9    heard to plea for mercy on their behalf.  And there certainly

10   is no reason why they couldn't get relief from the stay to let

11   them go ahead and assert those particular claims.

12        I heard the comment that there's not a better case

13   for it, but actually, I can think of a lot of cases because I

14   took a quick tour through Section 303(g) and I really didn't

15   find too much.  There's very little on 303(g).  But, one of the

16   cases I found had, shocking as it may be, a creditor -- excuse

17   me -- an alleged debtor, who is making all kinds of transfers

18   to insiders, family members, overseas, allegedly fraudulent

19   conveyances, and the creditors, when they filed for a Section

20   303 hearing, at the same time sought an injunction.

21        Now, traditionally, if people are doing wrong things,

22   people come to the -- creditors come to the Court and say, we

23   need a injunctive relief to hold the status quo.  And if it's

24   improper for Mr. French to quote, unquote, be making these

25   transfers -- like Mr. French is really making the transfer, the

1    Government is taking, Mr. French is not giving -- then they can

2    seek to enjoin Mr. French from doing that.  Our position in

3    that would be to simply go to the district court and say, in

4    effect, we're interpleading whatever our rights are, Judge.

5    You tell us what to do because of course we're not going to be

6    the judge and the jury under that particular scenario.  But,

7    that's what they really seem to be doing -- and, excuse me --

8    that's what they could be doing, if they thought they could do

9    it.

10          So, to hear that there is not a better factual

11   circumstance, I just shake my head in amazement.  I ask the

12   Court not to credit that a bit, because bankruptcy with the

13   extraordinary relief that they're asking for, usually is

14   intended to deal with extraordinary situations, outside of the

15   normal every day mill.  And the thought that Congress wants to

16   have a trustee appointed, so the trustee can go in and thwart

17   the processes, the criminal processes of the United States

18   District Court strikes me as an astonishing statement and one

19   that certainly would require --

20          THE COURT:  You think that's really what they're

21   trying to do here, thwart the district court?

22          MR. BALDWIN:  I think so, Your Honor.  I mean, I

23   think what they're trying to do is they're trying to stick

24   their fingers into the criminal forfeiture in a way that they,

25   I guess, think they themselves can't do.  That's the part I

1 don't understand because every right that a trustee has, they

2 themselves have.  And I don't -- and to the extent that they

3 have any ability to stop the forfeiture -- I mean, the trustee

4 inherits Mr. French's rights, of course.  But, the trustees

5 rights in that regard can't rise any higher than Mr. French.

6         So, it's fairly clear to me that what they want to do

7 is they want to use a trustee to do that which they could do

8 themselves in their own behalf, because they think that other

9 people who are going to be getting notice won't exercise the

10 rights that they have under the United States Code to go in and

11 make the pitch.  The U.S. Government is giving notice to all of

12 the parties just like this Court gives notice to all of the

13 parties when there's a bankruptcy case and everybody has the

14 opportunity to go into the court and make the pitch.  Every

15 creditor has the opportunity to come before Your Honor in a

16 bankruptcy case and say whatever is their position, so Your

17 Honor can issue the appropriate order based on the facts and

18 the law.

19         Every one of these parties has the right to go in

20 before the United States District Court and make the pitch that

21 they make, and if they don't think that for whatever reason Mr.

22 French should be able to exercise that forfeiture right, or if

23 they think that Mr. French doesn't own the asset, or that the

24 forfeiture is improper for some form or fashion they can

25 contest before the United States District Court that

1  forfeiture.

2         They are given notice.  These creditors have notice.
3  They plead that they have notice.  They plead there is a
4  procedure for them to go forward.  What they don't want to do,
5  apparently, is to exercise the rights that the law gives them
6  to go before the Court that has jurisdiction of the criminal
7  case involving Mr. French, that is dealing with his assets,
8  that is dealing with what the Government says, and they just
9  don't want to do it.

10        They have every practical power that a bankruptcy
11  trustee has, and they don't want to do it.  They want the
12  trustee to come in and represent not only themselves, but they
13  want the trustee to come in and represent every other person
14  who is getting notice, and there's been contention that the
15  Government is not given notices as broadly and as properly as
16  the Government should.  And to have the trustee, in essence,
17  abrogate the rights of all of these people to make whatever
18  pitch they want to make.

19        Now, a trustee, certainly, has general powers under
20  544.  There's plenty of decisions, for example, on fraudulent
21  conveyances bankruptcy trustee inherits the rights of all
22  creditors to make -- to bring fraudulent conveyance type
23  litigation, but there's been no showing here.  This emergency
24  is that if something -- if the trustee isn't appointed then all
25  of these people are going to lose all kinds of rights.  And

1 there's an absolute failure of proof to show that that is true.

2 There's been no showing and no proffer of any kind that these

3 dozens, hundreds, or thousands of people -- we don't have any

4 content on the numbers in the papers -- but that these people

5 aren't going to be given every proper opportunity to come

6 before the United States District Court and make whatever pitch

7 they want to make with regard to their rights to whatever

8 assets are in question.

9         In fact, they've given, Your Honor, the notice that

10 has gone out to all of the people saying, here's what you can

11 do.  They're pleading that the emergency exists because people

12 who haven't been given notice of the Government procedures

13 might not go and do that which the Government is telling them

14 the ought to do.  That stands procedure on its head.  There's

15 no basis that I can suggest to the Court why a trustee should

16 be appointed to do that which every party who has notice of the

17 proceedings could do in the absence of any showing that these

18 people would do it.  That stands the law on its head.  The

19 reason people get notice is so they can exercise their own

20 rights.

21         It's as if a debtor or this Court which sends notice

22 to creditors, we have an asset case file your claims, somebody

23 would then come along and say, well, yeah, all of the

24 individuals should get -- instead of filing their notice we

25 want somebody appointed to do this for them because they won't

1  go ahead and make their claims.  Well, this Court frequently

2  deals with creditors who don't file what they're supposed to

3  file when they're supposed to file it and that has consequences

4  unless there's good cause for not doing what they were supposed

5  to have done.

6       It's no different in Title 18 in the United States

7  District Court.  What we have here, as I said at the beginning,

8  is a substitution of rhetoric for reality.  The comments are

9  all very ad persona.  Mr. French is a bad person.  Mr. French

10 is voluntarily doing this, he's voluntarily doing that.  We

11 don't know.  We suspect.  We whatever.  But, the facts as shown

12 to the Court, or more correctly the facts as not shown to the

13 Court are to the absolute contrary.

14      I will summarize.  They haven't gone to the FBI to

15 try to look at the documents.  They haven't gone to the United

16 States Attorney to find out more information.  They haven't

17 made any filings with the United States District Court.  They

18 haven't shown why it is that the notice to all of these people

19 will be ineffective to give those people notice to exercise the

20 rights that they have under United States law to protect

21 themselves.  They themselves haven't done it.  They haven't

22 exercised their rights as judgment creditors under Virginia

23 law.

24      The only thing they have done, after not doing any of

25 these things, is claim that there is an emergency and come to

1 this court to ask that a bankruptcy trustee be appointed to do

2 the very same things that every single party in interest,

3 involving Mr. French and his property, has the right to do.

4        And I will close by saying the comment that they

5 think Mr. French has other assets is just flatly bizarre.  And

6 it also is unsupported.  Their own papers say the forfeiture

7 orders and notices attached hereto -- I read from Paragraph 9

8 of their paper that they filed at 3:15 yesterday afternoon,

9 that's less than 24 hours ago -- United States aims to forfeit,

10 substantially, all of debtor's assets.

11        Well, I believe that to be true.  I do not contest

12 that allegation that has been made very apparent to me as Mr.

13 French's counsel, what is the mission of the United States

14 Government.  We have no basis to contest it.

15        Right now, I'm not sure where they're going to want

16 to stop.  The Marshal service has, and it's on the public

17 record, it's in U.S. Attorney's Manual where they don't do

18 forfeitures.  Where they don't do forfeitures is when it costs

19 the Government money to do them.  Similar to the concept of

20 abandonment, where a trustee may not try to administer an asset

21 because it makes no financial sense to do so.

22        There is a pool table that's sitting in -- or a

23 conference table that's sitting in Mr. French's former offices

24 at 1314 East Cary Street.  The U.S. Marshall has been in there

25 and they've decided that they're not going to take the table

1  because it would cost too much to disassemble it, truck it

2  away, and then sell it, so they've just left it behind.

3          But, other than assets that per the U.S. Attorney's

4  Manual appear to be similar to abandonment type of issues, that

5  is it's just not worth the trouble, it seems to me that the

6  Government is doing all they can to strip Mr. French of his

7  assets and to take them for the United States and dispose of

8  them as the Attorney General of the United States decides,

9  which is what Congress actually says in its statute.

10          And so that's why, going to the point, Your Honor,

11  that their beef is -- their beef has to be, because you look at

12  all the other -- particularly the old Sherlock Holmes, you

13  eliminate all of the other possibilities -- their real beef is

14  with Title 18 and with the United States District Court with

15  the FBI and the United States Attorney's Office.  And what they

16  want to do is, they want to go in and effect to stop or take

17  issue with in some form or fashion the forfeiture process,

18  because if they didn't want to do that why are they asking for

19  a trustee?  Why aren't they just doing it themselves?  Why

20  haven't they done any of these other things that one would

21  normally expect a thinking rational -- I use the word sentient

22  creditor to do?

23          They haven't given that explanation to, Your Honor,

24  and that's why I ask that the status quo be allowed, that

25  people be remitted to the rights that they're granted under the

1  U.S. Code, under the criminal code, and take action on their

2  own merits, in their own right, before the Court that is

3  perfectly capable of adjudicating all of these claims.

4          THE COURT:  All right.  Thank you Mr. Baldwin.  I

5  don't need to hear anymore argument.

6          Mr. Baldwin makes a very eloquent argument, however,

7  it seems to me completely overlooks the fact that we have a

8  pending and voluntary bankruptcy in which a trustee would be

9  appointed.  The bankruptcy code gives us the situation -- the

10 Court the opportunity to appoint a trustee to investigate to

11 see if there's anything that could be done on behalf of the

12 general creditors.

13         I don't buy the argument that the motion claims that

14 the U.S. Attorney's Office is incompetent, or I don't buy into

15 this fact that this is somehow pinning the bankruptcy court

16 against the district court.  I wouldn't envy the trustee

17 carrying out its duties in this case, but it's obvious to the

18 Court that there should be a trustee and I'm going to grant the

19 motion.

20         Any questions about the Court's ruling?

21                 (No audible response)

22         THE COURT:  I'll ask you to submit an order.

23         MR. EBEL:  Your Honor, I do need to bring to the

24 attention of the Court, I believe under bankruptcy Rule 2001,

25 it does require us, as a petitioning creditor, to post a bond.

1          THE COURT:  I understand that, and I'll let you work

2    that out with the U.S. Trustee.

3          MR. EBEL:  Okay.

4          THE COURT:  All right.  If there's any question, you

5    can come back.  Okay.

6          MR. BALDWIN:  Thank you, Your Honor.

7          THE COURT:  All right.  Anything else?

8          MR. BALDWIN:  I have an order that could --

9          THE COURT:  Submit your order.  Submit it

10   electronically.

11         MR. BALDWIN:  Okay.  Thank you, Your Honor.

12         COURTROOM DEPUTY:  All rise.  Court's now adjourned.

13                         * * * * *

14                **C E R T I F I C A T I O N**

15         I, ANNEMARIE DeANGELO, court approved transcriber,

16   certify that the foregoing is a correct transcript from the

17   official electronic sound recording of the proceedings in the

18   above-entitled matter, and to the best of my ability.

19

20   /s/ Annemarie DeAngelo

21   ANNEMARIE DeANGELO

22   J&J COURT TRANSCRIBERS, INC.     DATE:  May 3, 2011

23

24

25

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/5/10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
UNITED STATES OF AMERICA,          :

              -v-                  :       09 Cr. 085 (JSR)

MARC DREIER,                       :       MEMORANDUM ORDER

              Defendant.           :
------------------------------------ x

JED S. RAKOFF, U.S.D.J.

     An under-appreciated evil of substantial frauds like those of

Marc Dreier is how they pit their victims against one another.

Where, as here, the funds remaining after the fraud is uncovered are

insufficient to make whole Dreier's numerous victims and creditors,

these unfortunates are left to squabble over who should get what.  In

this case, moreover, resolution of these competing claims involves

consideration of three bodies of law -- criminal law, securities law,

and bankruptcy law -- that cannot always be reconciled without some

friction.

     For some time now, it has been evident to this Court in

presiding over the criminal action against Dreier, and to the judges

presiding over the civil enforcement action brought against Dreier by

the Securities and Exchange Commission and the bankruptcy proceedings

involving the estates of Dreier and his law firm, Dreier LLP, that

these inherent tensions are best addressed through coordination and

cooperation by all concerned.  Accordingly, on April 22, 2009, the

*three judges convened a joint hearing to urge such a resolution by*

the affected parties.  Eventually, the Government, the Commission

(which is no longer directly affected), the bankruptcy trustees, and

various other affected parties reached a global settlement in the
form of several proposed agreements and orders, to which others filed
objections.   On January 12, 2010, Senior District Judge Cedarbaum,
Chief Bankruptcy Judge Bernstein, and the undersigned held a joint
hearing on the proposed settlement, to which all affected parties
were invited to attend and following which the judges received
further written submissions.   Now, subject only to certain related
proposals pending before the Bankruptcy Court, this Court, confirming
its Memorandum issued on January 29, 2010, hereby approves the
proposed settlement agreements and reconfirms the Court's prior
restitution order as well.

The first of the proposed settlement agreements is a
"Coordination Agreement" between the Government and the Trustee for
the Dreier LLP bankruptcy estate (the "Chapter 11 Trustee").   Under
this agreement, the Government will not seek forfeiture of any
recoveries generated through avoidance actions brought by the Chapter
11 Trustee, and the Government will release to the Chapter 11 Trustee
ninety-seven seized artworks that the Government is presently unable
to trace to the proceeds of Dreier's offenses.   In return, the
Chapter 11 Trustee promises not to contest forfeiture of the
properties listed in the schedule to the Court's Preliminary Order of
Forfeiture entered July 13, 2009.

Additionally, under the Coordination Agreement, the Chapter
11 Trustee will not challenge the forfeiture of funds disgorged by
GSO Capital Partners and its affiliates ("GSO") pursuant to a

2

proposed consent order (the "GSO Consent Order").   Under the GSO

Consent Order, GSO will forfeit to the Government $30,895,027.78 --

an amount representing payments of interest and fees received by GSO

facilities in connection with their investments in Dreier's

fictitious promissory notes.   In exchange for this payment, the

Government will forego seeking forfeiture of other GSO facility funds

presently under restraint because of their connection to Dreier's

note fraud.

In conjunction with the Coordination Agreement and the GSO

Consent Order, certain related applications are also pending before

the Bankruptcy Court.   First, the Chapter 11 Trustee seeks Bankruptcy

Court approval of the Coordination Agreement.   Second, the Chapter 11

Trustee and the Trustee for Dreier's personal bankruptcy (the

"Chapter 7 Trustee") seek Bankruptcy Court approval of agreements

with GSO whereby GSO will pay $9,250,000 to the Chapter 11 Trustee

and $250,000 to the Chapter 7 Trustee in exchange for the Trustees'

promise not to litigate any claims against GSO and the entry of a Bar

Order enjoining creditors and other parties in interest from seeking

to recover funds from GSO.   Although these applications are before

the Bankruptcy Court, not this Court, the Coordination Agreement

provides that, even if it is approved by this Court, it will not take

effect unless the Bankruptcy Court approves the settlement between

GSO and the Chapter 11 Trustee.

Also before this Court are stipulations between the

Government and the Chapter 7 Trustee (the "Chapter 7 Trustee

Stipulations") regarding the sale of three real properties listed in the Preliminary Order of Forfeiture (two houses in East Quogue and a Manhattan condominium). In exchange for the Chapter 7 Trustee's successful efforts to market and sell these properties, and because the Government previously agreed to release the personalty in these properties to the Chapter 7 Trustee, the Government proposes to release ten percent of the proceeds from the sale of these properties to the Chapter 7 bankruptcy estate.

Finally, before the Court is a proposed stipulation (the "Fortress Stipulation") between the Government and certain facilities managed by Fortress Investment Group LLC and its affiliates ("Fortress"). Because the Fortress facilities lost over $84 million from their investments in Dreier's fictitious notes, the Government does not intend to seek forfeiture of certain note fraud proceeds that were received by these facilities; accordingly, the proposed stipulation would vacate the restraining order that is currently freezing those funds.

While the undersigned has solicited the opinions of Judge Cedarbaum and Chief Bankruptcy Judge Bernstein as to their views of these proposals from the standpoint of securities law and bankruptcy law, this Court must address these proposals, first and foremost, from the standpoint of federal criminal law, especially the provisions of federal criminal law dealing with forfeiture and restitution. Under the restitution provisions, victims of crimes have the right to "full and timely restitution as provided in law." 18 U.S.C. § 3771(a)(6). This Court "shall ensure" that these and

4

other victims' rights are vindicated, and the Government has the obligation to "make [its] best efforts" to this end.  Id. § 3771(b)(1), (c)(1).  Thus, while the related forfeiture provisions provide only that a defendant shall forfeit "to the United States" the fruits of his crime, 21 U.S.C. § 853(a), including so-called "substitute assets" under certain conditions, id. § 853(p), the Government has represented that, consistent with applicable laws and regulations, the assets obtained from the forfeitures in this case will be applied toward victim restitution, see Gov't Letter, 4/22/09, at 10.

In furtherance of these laws, the Court, in the aforementioned Preliminary Order of Forfeiture, ordered preliminary forfeiture to the United States of $746,690,000 in cash held in accounts controlled by Dreier, as well as preliminary forfeiture of specific properties listed in that order.  As part of Dreier's sentence, he was also ordered to make an additional restitution payment to his victims in the amount of $387,675,303.  Also, on September 29, 2009, the Court entered a Second Amended Restitution Order specifying that if restitution is made in partial payments, those payments are to be distributed to the victims on a pro rata basis according to their loss amounts.

The forfeiture laws further authorize the Government to compromise competing claims to forfeited assets.  21 U.S.C. § 853(i)(2); accord In re W.R. Huff Asset Mgmt. Co., 409 F.3d 555, 564 (2d Cir. 2005).  Many of the objections to the settlement agreements here under consideration come down to the assertion that the

5

Government should not compromise its claims to certain artwork and other property that, in the objectors' view, belong, indirectly, to the victims. Thus, Fortress and certain other hedge funds (collectively, the "Hedge Funds"), who are by some measures the largest victims of Dreier's frauds (but who were also arguably the recipients of fraud proceeds) assert that the property to be turned over to the Chapter 11 Trustee under the Coordination Agreement is indisputably forfeitable, so its transfer would diminish the pool of assets available for distribution to the victims. In response to the Government's argument that the artwork proposed to be turned over to the Chapter 11 Trustee cannot be traced to the proceeds of Dreier's frauds, the Hedge Funds claim that such property is nevertheless subject to forfeiture as substitute assets. Furthermore, according to these victims, the "consideration" flowing to the Government under the Coordination Agreement -- the Chapter 11 Trustee's promise not to challenge either the forfeiture of the properties specified in the Preliminary Order of Forfeiture or the $30.9 million payment under the GSO Consent Order -- is illusory, as there would be no merit to any such challenge.

Although not without some merit, the Hedge Funds' arguments are ultimately unpersuasive. While the Chapter 11 Trustee's claims to the forfeited assets might ultimately prove defective, they are not so frivolous that their resolution would not result in protracted, costly, internecine litigation that would, at a minimum, have the effect of delaying and diminishing the victims' recoveries. For example, it is unclear whether the Government's interest in

6

substitute assets would relate back to the date of the wrongful acts. See <u>United States v. Parrett</u>, 530 F.3d 422, 430 (6th Cir. 2008) (describing circuit split on this issue). Thus, to the extent that the Government's interest in such property depends on the application of this "relation back" doctrine, litigation would be far from frivolous and its outcome uncertain. Concomitantly, the Government's promise to refrain from seeking forfeiture of any avoidance recoveries does not appear to give up anything of value, as the Government has taken the position that it is not entitled to pursue such forfeiture actions, <u>see</u> Transcript, 1/12/10 Joint Hearing ("Tr.") 35, and the Hedge Funds have not identified any authority indicating the contrary. It follows that one effect of the agreement is to incentivize the Chapter 11 Trustee to go after recoveries the Government could not pursue. While any such recoveries will go to the creditors of the Chapter 11 estate, many of these are also victims of the fraud.

It may also be noted that the Hedge Funds do not object to either the GSO Consent Order or the Fortress Stipulation insofar as they involve the Government's stipulation that it will not seek additional forfeiture from these parties. This is, in effect, contrary to their argument that the Government should seek to maximize the amount of assets available for distribution to victims regardless of other equitable considerations. It is hence evident that the Hedge Funds' objections to the Coordination Agreement prove too much, as they are unwilling to carry such objections to their

logical conclusions when doing so might adversely affect their own interests.

The other objections stated by the Hedge Funds are similarly unpersuasive.  For example, at the joint hearing on January 12, 2010, counsel for Eton Park Capital Management, L.P., one of the Hedge Funds, complained that the proposed settlement was reached without adequate input from some or all of the Hedge Funds.  See Tr. 45-46. When pressed, however, counsel was unable to make a specific application to the Court apart from requesting that approval of the Coordination Agreement be delayed until more "information" was provided regarding how the victims would be treated.  Id. at 46. Similar process-based objections were advanced by Fortress at the joint hearing and by the Hedge Funds in written submissions.

Although the Government is obligated to confer with the victims before compromising claims, see 18 U.S.C. § 3771(a)(4)- (5), "[n]othing in the [Crime Victims' Rights Act] requires the Government to seek approval from crime victims before negotiating or entering into a settlement agreement." W.R. Huff Asset Mgmt. Co., 409 F.3d at 564.  The Court accepts the Government's representation, not directly disputed by the Hedge Funds, that opportunities to confer were early offered to the Hedge Funds, who failed to take advantage of the offer, Tr. 47.  Moreover, as a result of the joint hearings in this matter, the Hedge Funds were aware at least as early as April 22, 2009 that settlement negotiations between the Government and the trustees were actively ongoing, and they could have sought to be heard by the Government at any time in the process.

The Court is driven to the conclusion that the real reason for the Hedge Funds' objections to the settlement is their recognition that, even though they were victims of Dreier's frauds, they were also the seeming recipients of fraud proceeds, and hence the bankruptcy creditors (including other victims) may have claims against the Hedge Funds in the form of so-called avoidance actions that, as a result of the proposed settlement, the Chapter 11 Trustee will be free to pursue without any fear that any recoveries will revert to the United States.   This is hardly a reason for rejecting the settlement.   Whatever the merits of the hypothesized avoidance actions, they will only serve to more perfectly resolve the relative rights of victims and creditors in accordance with the laws of the United States.

Thus, despite the foregoing objections, the Court finds that the Coordination Agreement is reasonable and in the best interests of the victims collectively.   As there appears to be no objection before this Court to the GSO Consent Order, which will make $30.9 million available for victim restitution, the Court approves that agreement as well.[1]   As to the Chapter 7 Trustee stipulations, although the Hedge Funds object to the payment of ten percent of real property proceeds to the Chapter 7 Trustee, this objection strikes the Court as yet another manifestation of their concern about funding the bankruptcy trustees' litigation efforts, which the Court finds

---

[1] Insofar as there are objections to the Bar Order's preclusion of victim or creditor actions against GSO, see Tr. 11, such objections are to be addressed by the Bankruptcy Court in the first instance.

9

unpersuasive for the reasons noted above.  Because this amount is
fair compensation for the Chapter 7 Trustee's sale of these
properties and his entitlement to the personalty therein, the Court
approves these stipulations.  Finally, as there is no objection to
the Fortress Stipulation, and because the Government's policy of
eschewing forfeiture from "net losers" makes sense, the Court
approves that stipulation as well.

The final matter to be resolved is the motion of an
individual victim, Paul Gardi, to modify the Second Amended
Restitution Order's scheme of <u>pro rata</u> distribution in order to
provide Gardi with special priority.  Gardi alleges that Dreier, who
was Gardi's lawyer, forged Gardi's signature to a settlement
agreement between JANA (a hedge fund) and a company controlled by
Gardi, and then arranged for JANA to wire the settlement funds, in
the amount of $6.3 million, into a trust account controlled by
Dreier, who then used the funds for himself.  Gardi claims that he is
entitled to priority over other victims because he is an individual
as opposed to an institutional investor, because the theft of his
settlement funds is different in nature from the note fraud losses
experienced by the Hedge Funds, and because the relative economic
impact of Gardi's losses is more substantial than the impact on
institutional victims.

Several affected parties have responded by arguing, among
other things, that Gardi's motion to amend the Second Amended
Restitution Order is untimely or otherwise procedurally improper;
that Gardi was not the only individual victim harmed by Dreier's

misappropriation or other misuse of escrowed funds; that Gardi's loss should not be considered to have been suffered by an individual, since the settlement was with his company; that Gardi's financial sophistication is not unlike that of an institutional investor; that JANA, rather than Gardi, was the true victim of this particular fraud; and that there is no principled basis for treating Gardi's loss as different in kind from the losses experienced by Dreier's other victims. The Government has taken the position that a pro rata share is appropriate because "no victim is any more or less deserving here of the restitution." Tr. 16. Finally, in an intermediate position, the representative of the bankruptcy estates of 360networks (USA) Inc. and its affiliates (the "360networks Representative") has submitted a response identifying the 360networks estates as similarly situated to Gardi in that they were victims of theft by Dreier in his capacity as their lawyer, and urges the Court to distinguish between "client" victims and "note fraud" victims by providing client victims with priority.

The Court will assume arguendo that the procedural objection to Gardi's submissions would ultimately not prevail and will instead proceed to the underlying merits. There is nothing per se unfair about a pro rata distribution; the Second Circuit has endorsed this approach as particularly appropriate for frauds like Dreier's involving a Ponzi scheme or the commingling of similarly situated victims' assets. See SEC v. Credit Bancorp Inc., 290 F.3d 80, 88-89 (2d Cir. 2002). It is clear from the responses that Gardi is not the only "client" victim of Dreier's frauds or to whom Dreier owed

fiduciary duties, and each case doubtless has its own nuances.
Additionally, the "note fraud" victims are only immediately the Hedge
Funds; it is the investors in these funds, including individuals,
charitable and educational institutions, and many others who are the
ultimate "note fraud" victims.  The truth is that a fraud as large
and egregious as Dreier's is like an earthquake that savages its
victims at random and is followed by a series of aftershocks that
destroys still further assets.  Any alternative to the pro rata
approach would entail a costly and extensive inquiry into the
circumstances of each victim's loss, which would likely devolve into
a war of recriminations, to the detriment of all concerned.
Accordingly, the Court denies Gardi's motion and confirms the pro
rata distribution scheme set forth in the Second Amended Restitution
Order.

   For the foregoing reasons, the Court hereby reaffirms its
Memorandum of January 29, 2010 and approves the Coordination
Agreement, the GSO Consent Order, the Chapter 7 Trustee Stipulations,
and the Fortress Stipulation.  The Clerk of the Court is directed to
close the entries numbered 102 and 106 on the docket of this case.[2]

---

[2] Still pending before the Court are three petitions filed
pursuant to 21 U.S.C. § 853(n) for ancillary hearings to
determine third party interests in property subject to
forfeiture.  Motion practice is underway with respect to the
Government's motion to dismiss the petition filed by the
360networks Representative.  Also, the Hedge Funds, in a series
of letters submitted to the relevant Courts and the Government,
set forth several arguments why the petition filed by Heathfield
Capital Limited ("Heathfield") should be dismissed.  While these
arguments will be considered if and when the Court reaches the
merits of the Heathfield petition, they provide no reason to
defer approval of the settlement agreements discussed herein.

SO ORDERED.

Dated: New York, NY
       February 5, 2010

JED S. RAKOFF, U.S.D.J.

13

