IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | **Criminal No. 3:11CR017** |
| JUSTIN GLYNN FRENCH, | ) ) ) | |
| Defendant. | ) ) | |

### GOVERNMENT'S PRELIMINARY REPORT AS TO RESTITUTION

COMES NOW the United States of America, by and through its counsel, Neil H. MacBride, United States Attorney for the Eastern District of Virginia and Laura Colombell Marshall and G. Wingate Grant, Assistant United States Attorneys, and submits the following report as to restitution. The purpose of this report is to apprise the Court of (1) the status of the loss review and (2) the methodology used by the Government to determine loss. The United States also respectfully requests that this Court issue several rulings based on the facts and authority cited herein which will streamline the restitution process.

The Government will submit a Final Report and Recommendation as to Restitution prior to the restitution hearing, to include specific recommendations as to restitution and outlining the facts and issues for all "Disputed Claims" requiring the Court to make specific rulings as to loss for individual victims.

**1. Status of Loss Analysis**

As of the date of this filing, all potential victims have been identified and were mailed a

Verification of Loss form (VOL). The Government anticipates restitution being awarded to both the Internal Revenue Service and the Virginia Department of Taxation. In addition, a total of 273 VOL forms were sent to prospective victims/investors. Fifty-seven of the recipients did not respond. The Government received a total of 214 VOLs completed by individual victims, married couples submitting one claim and business entities.[1] The respondents fall into the following categories: (1) 66 victims who purchased tax credits by investing in one of French's LLCs, but never received the credits; (2) 69 victims who purchased tax credits for one or more taxable years, but who either did not receive all the tax credits or did not use the total amount of credits purchased [2]; and (3) 78 victims who purchased tax credits, received them and have no financial loss at this time. In addition, there is one commercial entity which has claimed a loss which the Government believes is unrelated to the offense of conviction. The Government has communicated its position to this entity, and is awaiting a response.

After a comparison of VOL submissions with the records obtained through the investigation,[3] the Government has further categorized some of the claims as either undisputed

---

[1] When the initial mailing was made, there were some instances where the Government sent separate forms to spouses, as well as business entities and their owners. Thus, the number of responses is slightly less than the number of forms previously mailed.

[2] With respect to a small portion of this group, preliminary analysis indicates that nine of these victims did not have a net loss, even though there was some loss with respect to one or more investments. As set out below, the Government urges the Court to adopt the net loss analysis under which these nine respondents would not be entitled to restitution because they did not have a net loss.

[3] Extensive efforts have been made to verify claimed investments by using records obtained from the defendant and his business entities, as well as records independently obtained from financial institutions (the "investor records"). When a claimed victim had incomplete documentation and the investor records otherwise confirmed the amount claimed, the Government intends to recommend allowance of that claim. Because the investor records are incomplete in some instances, the Government will recommend awarding the amount claimed by

or disputed as detailed below. Undisputed Claims are those where (1) the amount sought by the claimant is sufficiently documented by evidence submitted in support of the claim, and/or (2) the amount sought is verified by records obtained from French Consulting Company or other sources through the course of the investigation. Disputed Claims currently consist of those claims where the Government disputes the amount sought in the VOL because (1) the asserted loss is not sufficiently documented or is contradicted by information obtained from another source; (2) the victim has failed to account for some benefit derived from the investment; or (3) restitution is sought for some claimed loss which is not "directly and proximately caused by the defendant's offense conduct." [4] An example of the second category above would be victims who have claimed a loss with respect to one transaction with the defendant, but have failed to account for the "profit" from another similar investment. Under the "net loss" method discussed below, all gains must offset losses. As set out below, the Government urges the Court to rule as a matter of law, that the "net loss" method of loss calculation should be employed. If the Court adopts this methodology, there would be no need for a hearing as to the claims currently in this category as this is purely a matter of law, and the Government can compute the proper amount of the claim once the Court approves the loss determination methodology.

---

the potential victim if supporting documentation is provided, regardless of whether the investor records confirm the amount claimed. In other words, the investor records have been used to verify claims when the potential victim has inadequate documentation, but the investor records have not been used to reject a claim that is otherwise appropriately documented.

[4] 18 U.S.C. §3663A(a)(2) ("victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered); *United States v. Squirrel*, 588 F.3d 207, 215 (4th Cir. 2009)(unless a plea agreement provides otherwise, "an order of restitution under the MVRA is to be based upon the loss directly and proximately caused by the defendant's offense conduct.").

## 2. Methodology for Calculating Restitution Amount

In determining the final claim amount, the Government proposes to employ a "net loss" method of determining restitution. This methodology is typically utilized in the context of Ponzi schemes in which the money received by later investors was used to pay earlier investors. *See In Re Manhattan Inv. Fund Ltd.*, 397 B.R. 1, 12 (S.D.N.Y. 2007) ("[T]he label 'Ponzi scheme' has been applied to any sort of inherently fraudulent arrangement under which the debtor-transferor must utilize after-acquired investment funds to pay off previous investors in order to forestall disclosure of the fraud." (*quoting In re Bayou Group, LLC*, 362 B.R. 624, 633 (S.D.N.Y. 2007). Thus, only actual losses which remain after consideration of all amounts paid or benefits derived, directly or indirectly, constitute losses compensable as restitution. *See United States v. Foley*, 508 F.3d 627, 636 (11th Cir. 2007) (approving government's deduction of "returns and repayments that victims received from their investments from the restitution amount" in Ponzi scheme); *In re Bernard L. Madoff Investment Securities LLC,* 424 B.R. 122 (S.D. N.Y. 2010)(adopting "net investment method" of loss for investors; rejecting "last statement method" which would include promised but unrealized gains); *United States v. Cabe*, 311 F.Supp.2d 501, 508-09 (D.S.C. 2003) (setting restitution at the amount invested less *any* payments received by victims).

The Government urges the Court to utilize the same methodology here given that the defendant's scheme involved the sale of fraudulently obtained tax credits. A tax credit is an amount deducted from the total tax liability owed by the taxpayer. As such, the value of a tax credit is 100% of the amount claimed. *See* U.S.S.G. § 2T1.1(c)(1) (for purposes of calculating tax loss under the guidelines, loss includes "100% of any false credits claimed against tax").

For example, if a victim invested $6,000 with French and received a $10,000 tax credit, the actual loss would be 0. The Government recommends that investors who have utilized tax credits fraudulently obtained by the defendant should be awarded restitution based on a "net loss" calculation.[5]

### 3. Proposed Procedure for Determining Restitution

In order to award restitution, the Government must prove the loss sustained by a victim by a preponderance of the evidence. 18 U.S.C. §3664(e). Should the defendant object to any of the Undisputed Claims or the Government's recommended amount as to Disputed Claims, the Government is prepared to present evidence to prove those amounts. In *Cabe, supra.*, the district court held evidentiary hearings at which "those claimants who had responded to the government's invitation for claims for whom additional documentation or information was required." 311 F.2d at 504. Those purported victims were invited to a hearing at which they were allowed to supplement their inadequate responses. The district court rejected claims by persons who failed to present independent proof of their claims. 311 F.2d at 505-06 ("[W]here

---

[5] A few victims have claimed a loss for interest and penalties paid to a tax authority as a result of not being able to use the tax credit and/or not being able to file a timely return. The Government submits that such claims should not be included in the restitution calculation. Given that the interest and penalties are associated with the tax consequences of individual victims, and many victims have yet to be able to determine what, if any, tax consequences will ensue from their use of the tax credits, calculating pre-judgment interest for most of the victims in this case would require "determining complex issues of fact related to the cause or amount of the victims' losses [and] would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. §3663A(c)(3)(B). Accordingly, restitution for such sums is not mandatory, and the Court should exclude pre-judgment interest as compensation for restitution purposes. The fact that some victims have already been able to determine the pre-judgment interest consequences of not being able to use a tax credit would give those victim a preference over victims who are not yet in a position to know the tax consequences of their dealings with French. The better approach would be to exclude all pre-judgment interest for all victims and thus treat all victims the same.

claims are not supported by independent proof, this court will decline to permit participation in the distribution of available funds.")

The United States proposes that those claimants who have submitted claims that are in any aspect disputed by the Government be afforded an opportunity for a hearing at which they may supplement or otherwise attempt to prove their claim. On May 18, 2011, the Government sent a request for additional documentation to 19 victims who had not adequately substantiated their financial loss. The Government is currently analyzing the documentation and continues to communicate with the victims in an effort resolve the claims. Once completed, the Government will send an election form notifying the victims of the methodology used to calculate their respective losses and the Government's recommendation as to the same. The victims will be given the option of accepting the Government's recommendation or appearing at the restitution hearing to submit their claim for restitution directly to the Court. The results of the election process will be addressed in the Government's Final Report as to Restitution.

Finally, the Government urges the Court to rule now that any disbursements by the Clerk's Office be made pro rata to the victims based on the amount of the restitution ordered to each victim and the amount to be distributed. *See, e.g., United States v. Drier*, 682 F.Supp. 2d 417, 422-23 (S.D.N.Y. 2010)(pro rata distribution to victims of fraud scheme is particularly appropriate given the commingling of similarly situated victims' assets; "Any alternative to the pro rata approach would entail a costly and extensive inquiry into the circumstances of each victim's loss, which would likely devolve into a war of recriminations, to the detriment of all concerned."); *In re 1031 Tax Group, LLC*, 439 B.R. 78, 81 (S.D.N.Y. 2010)(noting that courts generally favor pro rata distribution of defrauder's assets to multiple victims). The Government

intends to seek "restoration" of any forfeited assets in these cases whereby the Attorney General may "restore" forfeited assets to victims when certain conditions are met. *See United States v. Hurley*, 2010 WL 5082223 (N.D. Ga. 2010). One of the requirements of the Department of Justice policy on restoration is that victims be paid pro rata based on their loss amounts. *See United States v. Drier*, 2010 WL 1223087 (S.D.N.Y. 2010) (noting Attorney General's authority to restore forfeited assets to victims "which will entail the pro rata distribution . . .").

## CONCLUSION

Based on the foregoing and in anticipation of the restitution hearing, the Government respectfully requests that this Court issue the following rulings in order to 1) resolve legal issues which are now ripe for resolution, 2) inform the victims of the issues to be heard at the restitution hearing, and 3) streamline the hearing and promote efficient use of resources:

(1) that the Court will award restitution consistent with the Government's proposed "net loss" methodology and all tax credits received by a victim shall be credited against their loss amount;

(2) that the Court intends to deny any Disputed Claims not supported by independent proof;

(3) directing all Disputed Claimants to appear in person for the restitution hearing at which time they may present any additional evidence in support of their claim for restitution;

(4) that any Disputed Claimants who intend to appear at the restitution hearing to be set, shall notify the Court and the parties of their intent to appear not less than ten days in advance of the restitution hearing;

(5) that those victims who failed to respond to the Government's request for Verification of Loss will be excluded as compensable victims for purposes of restitution;

(6) that those victims whose claims are disputed by the Government and who have failed or fail to respond to the Government's notice as to the recommended restitution amount will be awarded restitution consistent with the Government's recommendation; and

(7) that the Court intends to provide in the restitution order that disbursements be made on a pro rata basis.

A proposed order to this effect is submitted herewith.

>Respectfully submitted
>
>NEIL H. MACBRIDE
>UNITED STATES ATTORNEY
>
>By:     /s/
>Laura Colombell Marshall
>Virginia Bar No. 38250
>G. Wingate Grant
>Virginia Bar No. 18643
>Assistant United States Attorneys
>United States Attorney's Office
>600 East Main Street, Suite 1800
>Richmond, Virginia 23219
>(804) 819-5512
>(804) 771-2316
>Laura.Marshall@usdoj.gov
>Wingate.Grant@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing will be filed electronically on August 8, 2011 to the following with electronic service to the following::

William Ray Baldwin, III
John K. Honey, Jr.
Marchant Thorsen Honey Baldwin &
Meyer LLP
5600 Grove Avenue
Richmond, Virginia 23226-2102
804-285-3888
804-285-7779
billbaldwin@comcast.net

Service will be made by hand delivery this 9th day of August, 2011 to the following:

Blakely D. Brown
Senior U.S. Probation Officer
U.S. Courthouse
701 East Broad Street, Suite 1150
Richmond, Virginia 23219

                /s/
Laura Colombell Marshall
Virginia Bar No. 38250
G. Wingate Grant
Virginia Bar No. 18643
Assistant United States Attorneys
United States Attorney's Office
600 East Main Street, Suite 1800
Richmond, Virginia 23219
(804) 819-5512
(804) 771-2316
Laura.Marshall@usdoj.gov
Wingate.Grant@usdoj.gov